**Jimmie Ruth DAUGHTREY,**
**Plaintiff–Appellant,**

v.

**HONEYWELL, INC., Bull HN Informa-**
**tion Systems, Talent Force, Inc., aka**
**Temp Force, Defendants–Appellees.**

No. 92–8221.

United States Court of Appeals,
Eleventh Circuit.

Oct. 7, 1993.

Jimmie Ruth Daughtrey, pro se.

Norman Stein, Tuscaloosa, AL, for plaintiff-appellant.

William Douglas Smith, Stepp Bowers & Smith, Atlanta, GA, for Honeywell, Inc.

**1490**

Stephen S. Lewenberg, Bull HN Information Systems, Inc., Billerica, MA, for Bull HN Information Systems.

Jesse P. Schaudies, Jr., Steven J. Whitehead, Troutman Sanders, Atlanta, GA, for Talent Force, Inc.

Before BIRCH, Circuit Judge, CLARK, Senior Circuit Judge, and HOEVELER *, Senior District Judge.

BIRCH, Circuit Judge:

Jimmie Ruth Daughtrey brought this action against Honeywell, Inc. and Bull HN Information Systems ("Honeywell")[1] alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").[2] The district court granted summary judgment in favor of Honeywell on all claims. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

## I. BACKGROUND

Daughtrey began working for Honeywell in May 1979 and was later employed at Honeywell's Contract Programming Center ("CPC") as a conversion specialist. On June 27, 1986, Honeywell laid off all fourteen employees of the CPC, including Daughtrey, and closed the CPC. For several months, Daughtrey attempted without success to find other employment as a computer programmer. Four former CPC employees, three of whom had accumulated no vested rights in Honeywell's pension plan, found employment with Innovation Systems Services ("ISS"), another division of Honeywell. In October 1986, Graybar Electric Company, Inc. ("Graybar") requested Honeywell's assistance in the development of a new computer system. Shortly thereafter, Daughtrey contacted Honeywell and signed a consultant agreement to provide services for the Graybar project.

Under the consultant agreement Daughtrey was to perform computer programming services at Honeywell's facilities under the direction of a Honeywell representative in exchange for an hourly wage. Item five provides as follows:

> The CONSULTANT is an independent contractor and shall be free to exercise discretion and independent judgment as to the method and means of performance of the services in connection with the assignments made hereunder by HONEYWELL. The CONSULTANT is not an employee of HONEYWELL and shall not, by virtue of this Agreement, be entitled to any benefits or privileges provided by HONEYWELL to its employees.

R3–76 Ex. D. The initial term of the agreement was from November 3, 1986 to June 30, 1987.

In June 1987, Honeywell entered an agreement with Talent Force, Inc.[3] under which Talent Force would serve as paymaster for Honeywell with respect to the consultants working on the Graybar project. Talent Force disbursed funds according to Honeywell's instructions, retaining the appropriate federal and state tax withholdings, and was not otherwise involved in any employment decisions. Dissatisfied with Honeywell's progress, Graybar decided to complete the project at its home office in St. Louis, Missouri. Honeywell then terminated its agreements with ten to twelve consultants, including Daughtrey, effective January 29, 1988.

Proceeding *pro se*, Daughtrey filed a complaint against Honeywell under ERISA alleging that she was laid off in 1986 for the purpose of interfering with her employee

---

* Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. From the pleadings it appears that Bull HN Information Systems, a subsidiary of Honeywell, Inc., employed Daughtrey. Neither defendant raised its corporate structure as a basis for summary judgment, however, and we adopt the district court's convention of referring to both entities as "Honeywell."

2. All section numbers in this opinion refer to Title 29 of the United States Code, unless otherwise noted.

3. Daughtrey dismissed her appeal with respect to Talent Force.

benefits and seeking welfare and pension benefits for the period from 1986 to 1988 during which she was employed as a consultant. She also sought statutory penalties under 29 U.S.C. § 1132(c) based on Honeywell's failure to provide her with a statement of her employee benefits within thirty days of her written request. By amended complaints, Daughtrey alleged that her layoff in 1986 and her termination in 1988 violated the ADEA.

The district court granted summary judgment in favor of Honeywell on all claims. The court concluded that Daughtrey had produced no evidence that Honeywell laid her off in 1986 based on her age or with the specific intent of interfering with her ERISA benefits. With respect to her claim for employee benefits for the period that she served as a consultant, the district court found that Daughtrey worked as an independent contractor, not an employee, and thus was not entitled to any benefits. Similarly, because she was not an employee at the time of her discharge, she could not maintain a claim for age discrimination for her termination in 1988. Finally, because Daughtrey had produced no evidence that she was prejudiced by Honeywell's failure to provide a timely statement of benefits, the district court granted summary judgment on her claim for penalties under section 1132(c).

## II.  DISCUSSION

### A.  *ERISA Claims*

#### 1.  1986 Layoff

The district court determined that undisputed evidence established that closure of the CPC and the associated layoffs were motivated by Honeywell's desire to reduce operating expenses.[4] The court held that Daughtrey failed to present evidence that she was terminated with the specific intent of interfering with her employee benefits and granted summary judgment in favor of Honeywell.

Section 1140 of ERISA prohibits the discharge of a participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. As anticipated by the district court, under section 1140, "[a] plaintiff must show that the employer had the specific intent to interfere with the employee's right to benefits." *Seaman v. Arvida Realty Sales,* 985 F.2d 543, 546 (11th Cir.1993); *see also Owens v. Storehouse, Inc.,* 984 F.2d 394, 399 (11th Cir.1993). "This standard does not require the plaintiff to show that interference with ERISA rights was the sole reason for discharge but does require plaintiff to show more than the incidental loss of benefits as a result of a discharge." *Seaman,* 985 F.2d at 546.

Daughtrey supported her allegation that Honeywell intended to interfere with her employee benefits with evidence that three of the four former CPC employees who were later employed by ISS had no vested pension rights. Even within this small sample, one of the former CPC employees was vested when hired by ISS. Daughtrey presented no evidence that by hiring nonvested employees, who within five years would attain vested pension rights, Honeywell on balance reduced its outlays for employee benefits; the evidence equally supports the inference that Honeywell could have decreased its long term expenditures by retaining those employees already vested. Further, by virtue of the layoffs the vested employees of the CPC received credit for an additional three years of employment for the purpose of calculating the level of vested pension benefits. In *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1224 (11th Cir.1993), discharged employees argued that an employer's proposal to streamline operations by reducing the number of salaried positions evidenced an intent to interfere with employee benefits. While the terminated employees were further into the pension plan than many of the

---

4.  It is not clear from the record whether Daughtrey raised a section 1140 claim with regard to her termination in 1988. The district court noted that Daughtrey could not maintain an ERISA claim for her 1988 termination because she was an independent contractor when discharged.

Because the district court erred in determining on summary judgment that Daughtrey was an independent contractor under the consultant agreement, we remand this putative section 1140 claim to the district court.

retained employees, the plaintiffs failed to show that the employer obtained a reduction in expenditures by discharging those employees entitled to greater pension benefits upon termination. *Id.* We held that the plaintiffs failed to demonstrate a prima facia case under section 1140. Similarly, in Daughtrey's case the employment by ISS of three former CPC employees who were not vested does not support an inference of intent to interfere with Daughtrey's benefits.

■ In support of its motion for summary judgment, Honeywell offered several affidavits by Honeywell personnel stating that the closure of the CPC and the associated layoffs were motivated by an attempt to reduce operating costs. The documents submitted by Honeywell indicate that, as of June 1986, Honeywell believed that the CPC was not necessary to the continued operation of the company and yet represented high overhead costs. Daughtrey failed to rebut this evidence. "[M]easures designed to reduce costs in general that also result in an incidental reduction in benefit expenses do not suggest discriminatory intent. Instead, the employee must introduce evidence suggesting that the employer's decision was directed at ERISA rights in particular." *Clark,* 990 F.2d at 1224 (citations omitted). As in *Clark,* the evidence concerning the elimination of the CPC is "indicative of an attempt to cut costs in general rather than interference with the employees' ERISA rights." *Id.* at 1224. Because the evidence offered by Daughtrey shows only "the incidental loss of benefits as a result of a discharge," the district court properly granted summary judgment on Daughtrey's section 1140 claim for her layoff in 1986. *Seaman,* 985 F.2d at 546; *see also Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 239 (4th Cir.1991); *Clark v. Resistoflex Co.,* 854 F.2d 762, 771 (5th Cir.1988).

### 2. Employee Benefits Claim

■ The district court granted summary judgment against Daughtrey on her claim for employee benefits for the period during which she served as a consultant on the ground that Daughtrey was an independent contractor, and thus not entitled to the benefits of an employee. The term "employee" as used in ERISA incorporates traditional agency law criteria for distinguishing an employment relationship from that of an independent contractor. *Nationwide Mut. Ins. Co. v. Darden,* —— U.S. ——, ——, 112 S.Ct. 1344, 1346, 117 L.Ed.2d 581 (1992). The Court adopted, for ERISA purposes, the common-law test articulated in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

"In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*Darden,* —— U.S. at ——, 112 S.Ct. at 1348 (quoting *Reid,* 490 U.S. at 751–52, 109 S.Ct. at 2178–79).

■ The district court relied heavily upon the consultant agreement, which states that Daughtrey was hired as an independent contractor. While the characterization of the hired party as an independent contractor or employee may be probative of the parties' intent, "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *NLRB v. United Ins. Co.,* 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968). The employment status of an individual for the purposes of ERISA is not determined by the label used in the contract between the parties. *Accord Spirides v. Reinhardt,* 613 F.2d 826, 832–33 (D.C.Cir.1979) (interpreting Title VII).[5] The

5. Honeywell argues that, under Georgia law, parol evidence is inadmissible to vary the terms

district court stated, however, that even if the consultant agreement was not determinative, the court would find that Daughtrey was an independent contractor based on the specialized nature of her work, the lack of supervision by Honeywell, the fact that she was hired for a specific project, and the fact that she was not to receive annual leave or retirement benefits. In concluding that no aspect of the relationship between Daughtrey and Honeywell was inconsistent with her denomination as an independent contractor in the consultant agreement, the district court did not discuss several facts suggesting that Daughtrey served as an employee: Honeywell furnished all equipment and supplies and required Daughtrey to work at its facilities, Daughtrey was paid by hourly wage and did not hold herself out as providing computer programming services to others, either Daughtrey or Honeywell could terminate the consultant agreement at will without incurring liability, and Daughtrey was required to perform services personally. Moreover, with regard to the control exercised by Honeywell over the manner and means by which Daughtrey performed services, the district court resolved disputed issues of material fact against Daughtrey, the nonmoving party. Honeywell contends that "Daughtrey and the Consultants were given broad discretion on the parameters of the work to be done.... and their progress monitored only sporadically." R3–78 (Brenner Aff. at 5). In her affidavit and an SS–8 IRS form,[6] however, Daughtrey states that the consultants were furnished with detailed user specifics requir-

ing exact compliance, that she was instructed on programming specifics by Honeywell team leaders, that Honeywell established certain operating procedures for programmers, and that she reported each day to a Honeywell supervisor.[7] Further, she claimed that Honeywell provided training manuals and classes for her instruction, and that the flexible hours afforded to consultants were subject to Honeywell's approval. The facts were therefore disputed on the pivotal issue of the degree of control and supervision exercised by Honeywell over Daughtrey. The district court erred by resolving these disputed issues of fact against Daughtrey on Honeywell's motion for summary judgment. See Pitts v. Shell Oil Co., 463 F.2d 331, 335–36 (5th Cir.1972) (reversing determination on summary judgment that hired party was an employee, and not an independent contractor, where evidence as to degree of control and supervision was disputed). Daughtrey's claim for employee benefits for the period during which she performed services as a consultant is therefore remanded for proceedings consistent with this opinion.

We note that, because several of the subsidiary facts underlying the ultimate determination of whether Daughtrey was an independent contractor or an employee were disputed, this case presents no opportunity to decide whether the district court's ultimate finding, if based on undisputed facts, would be treated on appeal as a question of fact,[8] a

---

of a final written agreement and, thus, the consultant agreement determines Daughtrey's status. By its own terms, Georgia's parol evidence rule does not bar consideration of *subsequent* representations or conduct that are inconsistent with a written agreement. *See, e.g., South Atlantic Prod. Credit Ass'n v. Gibbs*, 257 Ga. 521, 361 S.E.2d 167, 169 (1987); *American Century Mortgage Investors v. BankAmerica Realty Investors*, 246 Ga. 39, 268 S.E.2d 609, 611 (1980). More fundamentally, for the purposes of federal employment legislation, an individual's status as an employee is not determined by contract, but depends on all of the factual incidents of the relationship. *Darden*, —— U.S. at ——, 112 S.Ct. at 1348–49.

6. We note that the SS–8 form was signed by Daughtrey under penalty of perjury and attached

as an exhibit in opposition to Honeywell's motion for summary judgment.

7. Honeywell argues that Daughtrey admitted the lack of control over her performance by testifying in support of her ADEA claim that her managers, Bill Brenner and Charles Bailey, were not in a position to evaluate her performance. While Daughtrey testified at her deposition that she did not receive retrospective performance reviews, this evidence does not extinguish a material dispute of fact as to whether she was instructed and limited prospectively as to the means of performing her services, as represented in her affidavit and the SS–8 IRS form.

8. *See Roth v. American Hosp. Supply Corp.*, 965 F.2d 862, 865 (10th Cir.1992).

mixed question of law and fact reviewed only for clear error,[9] or a question of law.[10]

### 3. Section 1132(c) Penalty

■ Section 1025(a) of ERISA affords each participant in an employee benefit plan the right to request a benefit statement. 29 U.S.C. § 1025(a). Section 1132(c) provides that an employer who fails to comply with such a request within 30 days of the participant's written request may in the court's discretion be liable for penalties up to $100 per day. 29 U.S.C. § 1132(c). Daughtrey requested a statement of her accrued benefits by a letter dated October 18, 1988. On December 5, 1988, after the statutory period, Honeywell informed Daughtrey that it would respond to her request on July 28, 1989. Honeywell did not comply with its statutory duty until October 20, 1989, one year after Daughtrey's initial request. The district court nonetheless declined to impose any penalty under section 1132(c) based on Daughtrey's failure to show that she was prejudiced by Honeywell's failure to provide a timely statement of benefits. The court relied upon *Paris v. Profit Sharing Plan,* 637 F.2d 357, 362 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981), for the proposition that a showing of prejudice is required to impose penalties under section 1132(c). In *Curry v. Contract Fabricators, Inc. Profit Sharing Plan,* 891 F.2d 842, 847 (11th Cir.1990), however, we clarified *Paris,* indicating that "prejudice is not a prerequisite to an award of civil penalties" under section 1132(c). Since a plan participant would rarely be able to demonstrate that the failure to provide a timely statement of benefits in itself prejudiced the participant, the intent of Congress in enacting section 1132(c) would be frustrated by such a requirement. Additionally, the penalty range of up to $100

per day is unrelated to any injury suffered by the plan participant, suggesting that section 1132(c) is intended to punish noncompliance with the employer or administrator's disclosure obligations and not to compensate the participant.[11] The district court erred by basing its decision solely on Daughtrey's failure to show prejudice.

Moreover, the undisputed facts of this case require the district court to impose a penalty under section 1132(c). Honeywell provided Daughtrey's statement of benefits approximately one year after her written request, an interval twelve times longer than the statutory period. Honeywell offered no explanation for this delay except to assure the district court that the delay was not intentional. To the contrary, Honeywell's initial response, itself outside the statutory period, indicates on its face that Honeywell did not intend to respond until July 28, 1989, over eight months after the request. Further, Honeywell has suggested no excusable oversight or inadvertent act that explains the further delay of its response until October 20, 1989. Under these circumstances, Honeywell's ungarnished assertion that its delay was not intentional must be disregarded. Honeywell also assured the district court that its failure to comply was not the result of bad faith. From this we understand Honeywell to assert that it did not intend to prejudice Daughtrey by its failure to respond in a timely manner. While an employer or administrator's bad faith is certainly relevant under section 1132(c), the mere absence of bad faith no more exonerates the failure to provide a timely statement of benefits than does the absence of prejudice to the plan participant. *See Curry,* 891 F.2d at 847. Under these circumstances, involving an unexplained delay of twelve months in pro-

---

**9.** *See, e.g., Sargent v. Commissioner of Internal Revenue,* 929 F.2d 1252, 1254 (8th Cir.1991); *Professional & Executive Leasing, Inc. v. Commissioner of Internal Revenue,* 862 F.2d 751, 753 (9th Cir.1988).

**10.** *See, e.g., Penn v. Howe–Baker Eng'rs, Inc.,* 898 F.2d 1096, 1101–02 (5th Cir.1990); *Waxman v. Luna,* 881 F.2d 237, 240 (6th Cir.1989) (per curiam); *Holt v. Winpisinger,* 811 F.2d 1532, 1536 (D.C.Cir.1987); *Sica v. Equitable Life Assur. Soc.,* 756 F.Supp. 539, 540 (S.D.Fla.1990).

**11.** *See Sandlin v. Iron Workers Dist. Council,* 716 F.Supp. 571, 574 (N.D.Ala.1988) ("There is nothing in § 1132(c) which establishes monetary loss as a prerequisite to the 'up to $100 a day,' which is in the nature of punitive damages designed more to punish the intransigent administrator and to teach ERISA fiduciaries a needed lesson than to compensate the pensioner for actual loss."), *aff'd mem. opinion,* 884 F.2d 585 (11th Cir.1989).

viding a benefits statement, the district court's refusal on remand to impose a civil penalty under section 1132(c) would represent an abuse of discretion. The punitive purposes of section 1132(c) merit the imposition of some penalty. We therefore remand to the district court for the determination of an appropriate penalty within the statutory range of up to $100 a day.

## B. *ADEA Claim*

■■■ The district court granted summary judgment against Daughtrey on the ADEA claim for her 1988 termination because, as an independent contractor, Daughtrey was not entitled to maintain a claim under the ADEA.[12] *See* 29 U.S.C. § 623(a) (prohibiting age discrimination by an "employer").[13] The ADEA defines "employee" as "an individual employed by any employer" and provides no further guidance as to the scope of this term. 29 U.S.C. § 630(f). In varying contexts, courts have developed three tests for distinguishing an independent contractor from an employee. The traditional test, derived from common-law principles of agency, focuses primarily on the "hiring party's right to control the manner and means by which the product is accomplished." *Reid,* 490 U.S. at 751, 109 S.Ct. at 2178. The factors to be considered in this inquiry are those set out in *Darden,* previously discussed. —— U.S. at ——, 112 S.Ct. at 1348. In the context of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), several courts have found the traditional common-law agency test too restrictive. The FLSA defines "employ" broadly to mean "suffer or permit to work." 29 U.S.C. 203(g). Cognizant of this sweeping definition and the remedial purpose underly-

ing the FLSA, some courts have fashioned an "economic realities" test, by which an individual is an employee if economically dependent on the business to which he or she renders service.[14]

In the context of the federal employment discrimination statutes, the circuits generally have adopted a hybrid approach, which adheres to the common-law test, tempered by a consideration of the "economic realities" of the hired party's dependence on the hiring party.[15] In the context of Title VII, we have followed this approach:

> [W]e conclude therefore that the term "employee" in cases under Title VII is to be construed in light of general common law concepts. The analysis of the question in a given case should take into account the economic realities of the situation.... This does not mean, however, that the economic realities with respect to the dependence of the individual on the employment will control. Rather, it is the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee that are determinative.

*Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 340–41 (11th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982).

This case does not require us to determine whether the term "employee" carries a similar meaning under the ADEA or to address the position of the Second Circuit that, in the wake of *Darden,* the traditional common-law test for agency must be applied to the ADEA instead of the hybrid approach. *See Frankel*

---

12. The district court granted summary judgment on Daughtrey's ADEA claim regarding her layoff in 1986 because she failed to controvert Honeywell's legitimate, nondiscriminatory reason for her discharge. Daughtrey does not appeal this determination.

13. The ADEA does not provide relief for discrimination against an independent contractor. *See, e.g., Oestman v. National Farmers Union Ins. Co.,* 958 F.2d 303, 305–06 (10th Cir.1992); *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 980 (4th Cir. 1983); *EEOC v. Zippo Mfg. Co.,* 713 F.2d 32, 35 (3rd Cir.1983) (per curiam).

14. *See, e.g., Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1008 (2d Cir. 1991).

15. *See, e.g., Oestman,* 958 F.2d at 305; *Garrett,* 721 F.2d at 981–82; *Zippo Mfg.,* 713 F.2d at 38. A few circuits have applied the broader economic realities test to actions arising under Title VII and the ADEA. *See, e.g., Lilley v. BTM Corp.,* 958 F.2d 746, 750 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992); *EEOC v. Dowd & Dowd, Ltd.,* 736 F.2d 1177, 1178 (7th Cir.1984).

*v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993).[16] Both the hybrid test and the traditional common-law agency test emphasize the hiring party's right to control the manner and means by which the work is accomplished. *Id.* Under either test, therefore, the district court erred by resolving a disputed issue of fact regarding the degree of control exercised by Honeywell over the manner in which Daughtrey performed her services. The district court granted summary judgment in favor of Honeywell on the ADEA claim for Daughtrey's 1988 termination based solely on her status as an independent contractor.[17] We reverse this judgment in light of the genuine dispute of material fact regarding Honeywell's authority over the manner and means by which Daughtrey discharged her duties under the consultant agreement.

## III. CONCLUSION

Based on Daughtrey's failure to raise an issue of fact as to whether Honeywell intended to interfere with her ERISA benefits, the district court properly granted summary judgment in favor of Honeywell on Daughtrey's ERISA claim for her 1986 layoff. The district court erred, however, in concluding on summary judgment that Daughtrey performed her services under the consultant agreement as an independent contractor. Summary judgment should not have been granted on Daughtrey's claim for employee benefits for the period from 1986 to 1988 during which she performed services as a consultant. Further, under the facts of this case, Daughtrey was entitled, as a matter of law, to civil penalties under section 1132(c) of ERISA. With regard to her ADEA claim, the district court erred by determining on summary judgment that Daughtrey was an independent contractor and not an employee.

We therefore AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

---

**16.** In *Frankel,* the Second Circuit concluded that *Darden,* which defines "employee" in the context of ERISA, should be read for the broader principle that "where a statute containing the term 'employee' does not helpfully define it, the common law agency test should be applied." 987 F.2d at 90. The court noted that *Darden* rejected the directive announced in *United States v. Silk,* 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947) that the scope of "employee" should depend upon the statutory purpose. *Id.* In the view of the Second Circuit, *Darden* compels the

conclusion that the common-law definition of "employee" governs the scope of the ADEA as well as ERISA.

**17.** Honeywell urges that we uphold the judgment of the district court on the alternative ground that Daughtrey failed to raise a genuine dispute of fact as to whether she was terminated in 1988. The district court did not rule on this claim, and we decline to evaluate the evidence for the first time on appeal.