**Kenneth B. SMITH, et al., Plaintiffs,**

v.

**TORCHMARK CORPORATION, et al., Defendants.**

No. 95–3304–CV–S–RGC.

United States District Court, W.D. Missouri, Southern Division.

Dec. 14, 1999.

Order Denying Reconsideration Jan. 21, 2000.

Kenneth B. McClain, II, Humphrey, Farrington & McClain, P.C., Indepen-

dence, MO, Gregory A. Leyh, Kansas City, MO, for plaintiffs.

Lincoln J. Knauer, Hush & Eppenberger, Springfield, MO, David W. Sobelman, Christine F. Miller, Alan E. Popkin, David R. Dyroff, Jr., John T. Richmond, Jr., Husch & Eppenberger, St. Louis, MO, John T. Edwards, Robert C. Smith, Jr., Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, OK, James F. Monafo, Husch & Eppenberger, St. Louis, MO, Shannon L. Edwards, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, OK, Stewart D. McKnight, Joel E. Dillard, William J. Baxley, Baxley, Dillard, Dauphin & McKnight, Birmingham, AL, Gregory A. Leyh, Kansas City, MO, for defendants.

David W. Sobelman, Alan E. Popkin, Husch & Eppenberger, St. Louis, MO, for Globe Life and Accident Insurance Company, counter-claimant.

### ORDER

RUSSELL G. CLARK, Senior District Judge.

On May 24, 1999, defendants filed nine separate motions for summary judgment, detailing their beliefs that they are entitled to judgment as a matter of law on all of plaintiffs' claims which have been given class action status by the Court. Specifically, these are Counts IV, V, and VI of Plaintiffs' Second Amended Complaint. Counts I and II of that complaint relate to breach of contract claims as to named defendants only. Count III is a breach of contract action for named plaintiff Ms. Mary Marjorie Spikes. Counts VII and VIII of the Second Amended Complaint were RICO claims, previously dismissed. Finally, Counts IX and X are also RICO claims, alleging that defendants purposefully conspired to defraud plaintiffs by, *inter alia*, denying them renewal commissions under the terms of the employment contracts and other employee benefits.

The Court allowed plaintiffs an extension of time in which to respond due to a delay in obtaining deposition testimony. Plaintiffs filed their responses on October 13, 1999, and defendants filed replies on November 19, 1999. The motions for summary judgment are, therefore, ripe for review. For the reasons stated below, the Court will grant defendants' motions for summary judgment.

### I. SUMMARY JUDGMENT STANDARD

There are well settled principles in ruling on a motion for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact present in the case and judgment should be awarded to the party seeking the motion as a matter of law. *Langley v. Allstate Insurance Co.*, 995 F.2d 841, 844 (8th Cir. 1993). Because the summary judgment remedy is drastic, it should not be granted unless the moving party has established the right to a judgment with such clarity that there is no room for controversy. *Umpleby v. United States*, 806 F.2d 812, 814 (8th Cir.1986). However, as the Supreme Court noted in *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole...."

In order for a motion for summary judgment to be defeated, the nonmoving party must resist the motion by making a sufficient showing on every element of its case on which it bears the burden of proof, *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir.1992), and the factual dispute "must be outcome determinative under prevailing law." *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992). The Supreme Court has held that summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. However, such a motion is to be viewed in the light most favorable to the opposing party who also must receive the benefit of all reasonable inferences to be drawn from the underlying facts. *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1244 (8th Cir. 1991).

The standard for granting a motion for summary judgment is similar to that of a directed verdict: the evidence must be such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Westchem Agricultural Chemicals, Inc. v. Ford Motor Co.*, 990 F.2d 426 (8th Cir.1993). Summary procedures are appropriate where the issues for resolution are primarily legal rather than factual. *Parmenter v. Federal Deposit Insurance Corp.*, 925 F.2d 1088, 1092 (8th Cir.1991). Issues of fact must be material to a resolution of the dispute between the parties; where the only disputed issues of fact are immaterial to the resolution of the legal issues, summary judgment is appropriate. *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992). In ruling on a motion for summary judgment, the Court does not decide material fact issues, rather it determines whether or not they exist. *Parmenter*, 925 F.2d at 1092.

## II. DISCUSSION

This lawsuit began in 1995, as a breach of contract complaint, brought by several insurance agents. The agents alleged that their former employers, the defendant insurance companies, conspired to prevent the agents from receiving vested renewal commissions under terms of their contracts, thus allegedly breaching the terms of the contracts, as well as violating provisions of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). On February 26, 1996, the Court granted class action status and described the class as: "All persons throughout the United States and its terri-

tories who have worked selling health or medical insurance for Globe Life & Accident Insurance Company, since 1970."

In 1997, the Court allowed the plaintiffs to expand their charges to include additional claims brought pursuant to the Employment Retirement Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Because plaintiffs alleged that defendants knowingly pursued supposedly fraudulent actions to deprive the plaintiff class of their rightful "employee" benefits, the RICO Counts also applied to the Counts brought under the auspices of ERISA.

The lawsuit plodded slowly forward and in late 1998 defendants filed a Motion to Decertify the Class. In response to this motion, plaintiffs stated that they were not pursuing any "classwide trial on the breach of contract claims." Consequently, on February 22, 1999, the Court granted in part and denied in part defendants' motion to decertify the class. The Court amended the class description to reflect that the class was pursuing only the ERISA claims and consisted of: "All persons throughout the United States and its territories who have worked selling health or medical insurance for Globe Life & Accident Insurance Company, since September 2, 1974."

In Counts IV, V, and VI, the ERISA claims, the agents maintain that their employers willfully set out to avoid paying them employee benefits by labeling them "independent contractors," when, in fact, the employers treated the agents as though they were employees. The plaintiff class maintains that, rightfully, they should have been due all the benefits that the defendant employers' other employees received. It is on these claims that defendants seek summary judgment.

The defendant employers required the newly employed insurance agents to sign agreements entitled "Independent Agent's Contract" when they were hired. This contract contained the following provision under the caption, **"INDEPENDENT CONTRACTOR"**:

It is expressly agreed that the relationship intended by this Contract between Agent and Company shall be that of an Independent Contractor only, and that nothing contained herein shall be construed to create the relationship of employer and employee. This agreement or any benefit hereunder may not be assigned, transferred, or pledged by the Agent.

Defendants' Memorandum in Support of all Nine Motions for Summary Judgment, Exhibit 1. Other portions of that agreement were entitled, "**MANNER OF CONDUCTING BUSINESS**," "**EXPENSES**," and "**COMMISSION**." On Page 2, under the caption, "**VESTING OF RENEWAL COMMISSIONS**," the agreement defined the agents' entitlement to renewal commissions when the agents had been employed by the company for certain periods of time and contained paragraphs detailing the rights of the agents when they become disabled or died while they were employed with the company.

Defendants contend that the fact that the agents signed these agreements designating themselves as "independent contractors" should now bar the agents' ERISA claims. Defendants offer *Capital Cities/ABC, Inc. v. Ratcliff,* 141 F.3d 1405 (10th Cir.), *cert. denied,* 525 U.S. 873, 119 S.Ct. 173, 142 L.Ed.2d 141 (1998) for support. That Tenth Circuit case involved a similar, but not totally analogous situation. In *Capital Cities/ABC, Inc.,* the Kansas City Star sought a declaratory judgment seeking to prevent newspaper carriers from claiming any entitlement to ERISA benefits. *Id.* at 1408. The carriers filed a class action suit against the newspaper seeking exactly that: "employee" benefits. The two cases were consolidated.

Like the insurance agents in the case before this Court, the newspaper carriers signed "Agency Agreements," a provision of which designated the carriers as "independent contractors" and not employees. *Id.* The Agency Agreements expanded the discussion of the relationship between the parties to include the following specific preclusion to expectations of benefits:

It is further expressly understood that, as an independent contractor, The Agent will not receive, and has no claim to, any benefits or other compensation currently paid by The Star to its employees or hereafter declared by The Star for the benefit of its employees. The Agent's compensation under this Agreement shall consist, in its entirety, of the fees set forth in paragraph 8 below.

*Id.* In the case before the bar, the Independent Contractor Agreement broadly notes that "nothing contained herein shall be construed to create the relationship of employer and employee."

The *Capital Cities/ABC, Inc.* court examined "whether the Agreements constitute a mutual understanding that the Carriers would not receive benefits under the Star's Plans." *Id.* at 1410. The court observed that the newspaper carriers worked for years without complaint, that they had presented no evidence that they were unaware of their status or attempted to challenge it. *Id.* The court concluded, therefore, "while the Carriers' affidavits *contain many statements suggesting that the Star did not in fact treat them as independent contractors, that is actually irrelevant* to the narrow question at issue in this case—namely, whether the Carriers voluntarily agreed that they would receive no benefits under the Plans." *Id.* (emphasis added). The Tenth Circuit held that the agreements "foreclosed the Carriers' right to benefits." *Id.* at 1411.

The Eighth Circuit has not faced such a question. However, in a recent case from the Eastern District of Missouri, a federal district court dismissed an ERISA claim on facts not unlike the situation before this Court. In *Kienle v. Hunter Engineering Co.,* 24 F.Supp.2d 1004 (E.D.Mo.1998), *aff'd,* 187 F.3d 641, 1999 WL 603850 (8th Cir.1999) (mem), the district court ruled that the statute of limitations barred a sales representative's claims that his employer wrongfully denied him ERISA benefits by designating him as an independent

contractor, when in fact he was treated as an employee. *Id.* at 1005. That agreement—like the one in the instant case—provided that "it is the essence of this Agreement that the Sales Representative is a self-employed independent business person [and] ... shall not be considered or deemed in any way to be an employee of the Company...." *Id.* While dismissing the plaintiff's claims on the statute of limitation grounds, the district court noted "that, in any event, the sales representative agreement quoted above would preclude plaintiff's claims as a beneficiary," citing the Tenth Circuit decision in *Capital Cities/ABC, Inc., Id.* at 1407. The Eighth Circuit affirmed *Kienle* without comment.

In the dispute before this Court, while the insurance agents' contracts did not contain as many specific details as the agreement at issue in *Capital Cities/ABC, Inc.,* it did designate a plan whereby the agents could receive vested benefits after being employed a certain length of time. Such a plan implies that agents had an expectation to receive long-term benefits through the contract and not under ERISA. Like the newspaper carriers in *Capital Cities/ABC, Inc.* and the plaintiff in *Boren v. Southwestern Bell Telephone Co., Inc.,* 933 F.2d 891 (10th Cir.1991), under the contracts they signed, the insurance agents demonstrated that a mutual understanding existed between the respective parties that the various employment agreements defined the nature of the benefits that the employees would receive.

Further, like the newspaper carriers in *Capital Cities/ABC, Inc.,* there is no evidence that the agents challenged their status before commencement of this lawsuit. Plaintiffs did not seek to gain ERISA benefits at any time until well into the time frame of this lawsuit. In fact, this dispute began as only a breach of contract action and this Court concludes that is where it should remain.

As further evidence of the understanding of the relationship between the parties, the terms of several of the plans specifically exclude "agents" from participation.

The Supreme Court has directed the interpretation of an ERISA plan to proceed like that of any contract dispute: a court should examine the language of the plan and determine the intent of the parties. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112–13, 109 S.Ct. 948, 955–56, 103 L.Ed.2d 80 (1989). Both the Torchmark Corporate Pension Plan ("Torchmark Plan") and the Retirement Plan for Employees of Globe Life and Accident Insurance Company and its Affiliates ("Globe Plan") explain who would be allowed to participate in those plans.

The 1989 Torchmark Plan defines "eligible employees" as "All Employees of an Employer other than (a) general agents, trainers, agents, branch and regional managers, brokers, solicitors, unit managers or any other individual whose primary duty involves the direct sale of insurance, regardless of the mode of compensation." Memorandum in Support of Defendants' Motion for Summary Judgment on the Torchmark Corporation Pension Plan, Exhibit 4, at I–6. The Globe Plan defines workers who are eligible to participate in almost identical terms. Memorandum in Support of Defendants' Motion for Summary Judgment on the Globe Retirement Plan, Exhibit 4, at 4. Consequently, both of these plans expressly and unambiguously exclude agents from definitions of those eligible to participate.

There are no disputes to the material facts. The insurance agents signed agreements clearly stating that they were "Independent Contractors." Those agreements provided for the agents to receive certain vested renewal commissions, as well as compensation in the event of disability or death. The agents' signatures on those agreements showed that they understood what their intended status to be. For the above stated reasons, the Court will grant Defendants' Motions for Summary Judgment.

Because a portion of Counts IX and X, the RICO claims, pertain to the alleged conspiracy to defraud plaintiffs out of their

ERISA benefits, the Court will grant summary judgment on those Counts, as they relate to the ERISA Counts.

Therefore, to summarize: All that remains in this lawsuit are Counts I, II, III, IX, and X. Counts I and II are breach of contract claims as to named defendants only. Count III is a breach of contract action for named plaintiff Ms. Mary Marjorie Spikes. Finally, Counts IX and X are RICO claims, alleging that defendants purposefully conspired to defraud the named plaintiffs by denying them renewal commissions under the terms of the employment contracts.

Accordingly, it is

ORDERED that all nine of defendants' motions for summary judgment are granted as to Counts IV, V, and VI and those Counts shall be dismissed; and it is further

ORDERED that Plaintiffs' Counts IX and X (the RICO claims) that relate to Plaintiffs' ERISA action shall be dismissed.

### ORDER

On December 23, 1999, plaintiffs filed a Motion for Reconsideration and for Clarification of the Court's Order of December 14, 1999. On January 5, 2000, defendants filed a response and plaintiffs filed their reply on January 14, 2000. The motion is, therefore, ripe for review.

In the Order of December 14, 1999, the Court granted defendants' nine separate motions for summary judgment and dismissed Counts IV, V, and VI, as well as any portions of RICO Counts IX and X that related to plaintiffs' ERISA claims. Plaintiffs contend that the Court obviously suffered from "confusion" and applied a "clearly erroneous legal analysis." It is for the Eighth Circuit Court of Appeals to determine if this Court has erred. For the reasons stated below, plaintiffs' Motion for Reconsideration is denied.

The Court's decision to grant summary judgment rested primarily on the fact that the plaintiff agents signed contracts with the defendant insurance companies desig-

nating the agents as "independent contractors" and specifically defining their relationship as NOT employer-employee. Further, and more importantly, the contract quoted in the Court's Order of December 14, 1999, contained additional provisions relating to working conditions, compensation in the form of commissions on the sale of insurance policies, benefits due upon death or disability, and vested benefits of renewal commissions due to the agents after a certain duration of continuous employment. It also provided that the commissions provided for by the contract were to be "in full satisfaction of all claims upon the company on account of services and expenses under this contract."

Plaintiffs now hurl several arguments at the Court's analysis: (1) different forms of the independent agent contract were in use at different points of time; (2) the Court ignored *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) in reaching its conclusion; and (3) the Court "went way beyond the factual record" to grant summary judgment to defendants.

Plaintiffs point to their Exhibit 8, attached to Plaintiffs' Memorandum in Opposition to Defendants' Nine Motions for Summary Judgment, as evidence for the assertion that different contracts are at issue and that, therefore, the language of the contract is not dispositive. That Exhibit contains a contract that contains substantially the same language as the contract on which the Court based its earlier ruling: it is "expressly agreed that the relationship between Agent and Company shall be that of an Independent Contractor only, and that nothing contained herein shall be construed to create the relationship of employer and employee." The contract also has provisions for salary in the form of commissions, vested renewal commissions after specific terms of continuous employment and in the event of death or disability, and that the commissions were "to be in full satisfaction of all claims upon the Company on account of services and

expenses hereunder." The Court cannot find any significant difference in this contract from the one quoted in the Order of December 14, 1999.

Secondly, the Court did not ignore *Darden* in reaching its conclusion. *Darden* merely defines how the term "employee" shall be construed in the context of an ERISA claim. Plaintiffs read *Darden* too broadly. Plaintiffs also maintain that *Berger Transfer & Storage v. Central States, Southeast and Southwest Areas Pension Fund,* 85 F.3d 1374 (8th Cir.1996) is the controlling law in this circuit and the Court should not have relied on the Tenth Circuit case of *Capital Cities/ABC, Inc. v. Ratcliff,* 141 F.3d 1405 (10th Cir.), *cert. denied,* 525 U.S. 873, 119 S.Ct. 173, 142 L.Ed.2d 141 (1998). There is no evidence in *Berger* that the truck driver plaintiffs in that case signed agreements that specifically provided long-term benefits as the contracts at issue in the case at bar. *Berger* is, therefore, distinguishable. Further, while the plaintiffs maintain that this Court should not rely on the Tenth Circuit decision in *Capital Cities/ABC, Inc.,* the Court will observe that the Supreme Court has denied certiorari in that case.

Plaintiffs urge the Court to heed the decision in *Daughtrey v. Honeywell,* 3 F.3d 1488 (11th Cir.1993), which found that the employment status of an individual for the purposes of ERISA is not determined by the label used in the contract between the parties. The Court agrees with that holding. The agreement at issue in *Daughtrey,* however, did not contain language that provided for payment of commissions and the vesting of renewal commissions.

Plaintiffs mistakenly presume that the Court considered contract claims not at issue in the summary judgment motions to reach its conclusion that defendants were entitled to summary judgment on the ERISA claims. On the contrary, all the Court did was use the terms of the contract, which the agents signed upon commencing their employment, to determine that those contracts evinced an intention to preclude the agents from later claiming that they were entitled to benefits other than those provided for in the contracts.

Accordingly, it is

ORDERED that Plaintiffs' Motion for Reconsideration and for Clarification is denied.