**David GASKELL and Carolyn Gaskell, Plaintiffs,**

v.

**The HARVARD COOPERATIVE SOCIETY, Benefit Plans Northeast, James A. Argeros, personally, and Leonard Cutler, personally, Defendants.**

**Civ. A. No. 90–12835–H.**

United States District Court, D. Massachusetts.

May 17, 1991.

---

Norman H. Jackman, Comras & Jackman, Boston, Mass., for plaintiffs.

Susan L. Lennox, Francis J. Lawler, Peabody & Brown, Pamela Hope Worstell, Coopers & Lybrand, Boston, Mass., for defendants Harvard Co-op Soc. and James A. Argeros.

Dennis J. LaCroix, Blue Cross and Blue Shield of Mass., Inc., Boston, Mass., for defendant Blue Cross and Blue Shield of Mass, Inc.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Plaintiff David Gaskell was employed for many years by the Harvard Cooperative Society (the "Coop"). Due to severe illness, he became permanently disabled, and, in January, 1988 he resigned from the Coop. Plaintiff Gaskell commenced this action to enforce his rights and those of his spouse, Carolyn Gaskell, to continued health insurance coverage under the Coop's group health plan. In particular, Gaskell asserts that the Coop failed to provide appropriate "continuation coverage" in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub.L. No. 99–272, 100 Stat. 231 (1986).[1]

This case now comes before this Court on cross-motions by the plaintiffs and by the defendants, the Coop and its officer James Argeros, for judgment on the pleadings.[2] After a review of the record, and after a hearing, the Court rules as follows:

### I. *Plaintiffs' ERISA Claim*

Count I of plaintiffs' Amended Verified Complaint alleges that the defendants violated ERISA by failing to provide appropri-

---

**1.** Hereinafter, all references to "ERISA" should be understood to mean "ERISA as amended by relevant provisions of COBRA."

**2.** Defendants Benefit Plans Northeast and Leonard Cutler have not filed any motions with this Court, nor have they appeared at any hearing held in this case. It is understood, however, that any rulings of law contained in this opinion, if applicable, would be binding on Benefit Plans Northeast and Mr. Cutler.

ate continuation coverage to the Gaskells. In particular, plaintiffs contend that the Coop was obligated to provide health plan coverage for the period July 1, 1988 through at least July 1, 1991 and that the Coop wrongfully terminated such coverage in July, 1989. Defendants insist that they had no duty to provide coverage beyond July 14, 1988. This Court must now establish the appropriate continuation coverage period.

ERISA requires an employer to provide continuation health plan coverage for a period of eighteen months to any covered employee who would otherwise lose health plan coverage as the result of termination or a reduction in hours. 29 U.S.C. §§ 1161–62, 1163(2). Such coverage is usually provided by the employer at the employee's own expense. 29 U.S.C. § 1162(3). The statute further requires that the employer, through the health plan administrator, notify the employee of his rights with respect to such continuation coverage. 29 U.S.C. § 1166. Based on these provisions, this Court must determine at what point the Coop became obligated to provide continuation coverage to Mr. Gaskell.

The facts in this case are not disputed. Mr. Gaskell took disability leave, with full salary and benefits, from January 14, 1987 to January 14, 1988. Shortly thereafter, because Mr. Gaskell was still unable to return to work, he resigned from the Coop, effective January 14, 1988. The Coop sent Mr. Gaskell a notice concerning continuation of his health plan coverage (the "COBRA Form") in April, 1988. The notice indicated that the Coop would pay for Mr. Gaskell's health plan coverage through June, 1988, at which time, pursuant to his rights under ERISA, Mr. Gaskell would have the option of continuing his coverage for eighteen months at his own expense through January, 1990. Mr. Gaskell, in-

deed, elected to continue health plan coverage, and he undertook to pay monthly premiums beginning July 5, 1988.

The Coop admits that it was bound under ERISA to provide Mr. Gaskell with continuation health plan coverage for an eighteen month period. The Coop contends, however, that its obligation under ERISA commenced as of the date Mr. Gaskell originally took leave in January, 1987. It was at that point, the Coop argues, that Mr. Gaskell experienced a "qualifying event"—a reduction in hours—which triggered the continuation period. *See* 29 U.S.C. § 1163(2).[3] Thus, the Coop concludes, Mr. Gaskell legally was entitled to continuation coverage only for the period January 14, 1987 through July 14, 1988. The fact that the Coop "gratuitously" paid for Mr. Gaskell's continuation coverage during this period through June, 1988, the Coop suggests, does not alter its obligations or affect the running of the eighteen-month period.

 This Court cannot agree with the defendants' analysis, however. Under ERISA the employer is obligated not only to provide continuation coverage but also to give an employee proper notice of his rights to that coverage. Unless and until such notice is given to the employee, the continuation period cannot begin to run. Apparently, the Coop was well aware of its statutory duty to give such notice, because the Coop, in fact, sent Mr. Gaskell a COBRA Form in April, 1988 indicating that his continuation coverage would begin July 1, 1988. Though the Coop, perhaps, *could* have designated Mr. Gaskell's leave as the operative "qualifying event" and, thus, *could* have fulfilled its legal obligation to provide coverage to Mr. Gaskell by providing continuation coverage between January, 1987 and July, 1988,[4] the fact remains that the Coop did not do so.

**3.** Section 1163 provides, in relevant part, that:
... the term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:

(2) The termination ... or reduction of hours, of the covered employee's employment.

**4.** Because there is no evidence concerning the Coop's policy with regard to the provision of benefits to employees on disability leave, the Court cannot determine whether or not Mr. Gaskell, in fact, would have lost his health plan

Following Mr. Gaskell's leave in January, 1987, the Coop failed to provide Mr. Gaskell with proper statutory notice of his rights to continuation coverage and thereby failed to satisfy a necessary prerequisite to the initiation of the continuation period. Thus, in the absence of proper notice, the required eighteen-month continuation period could not, and did not, start to run. Rather, the period commenced on precisely the date that the Coop indicated in the COBRA Form that it would commence: July 1, 1988. The fact that the Coop gratuitously, or even mistakenly, paid for Mr. Gaskell's health plan coverage throughout the period of his disability leave and for nearly six months following his resignation in January, 1988 cannot, in retrospect, be considered as somehow obviating the notice requirement or altering the continuation period.

■ Because Mr. Gaskell became entitled to eighteen months of continuation coverage, effective July 1, 1988, he was entitled to such coverage until January 1, 1990. During that period, however, a second "qualifying event" occurred that further extended plaintiffs' coverage. In particular, on July 1, 1989 Mr. Gaskell became eligible for Medicare benefits under the Social Security Act, 42 U.S.C. §§ 1395–1395zz. When an employee becomes entitled to Medicare benefits, certain qualified beneficiaries—such as a spouse or dependent children—become entitled, under ERISA, to thirty-six months of continuation coverage. 29 U.S.C. § 1162(2)(A)(v); *see also* 29 U.S.C. § 1162(2)(A)(ii) (governing multiple qualifying events generally). Thus, in July, 1989, Mrs. Gaskell became entitled to a period of thirty-six months of coverage. For purposes of this case, the thirty-six month period of coverage runs from the date of the original qualifying event.[5] *See* 29 U.S.C. § 1162(2)(A)(ii).

■ The facts of this case make a straight-forward application of the statutory language somewhat difficult. Indeed, had the Coop designated either Mr. Gaskell's disability leave or his resignation as the operative "original qualifying event," and, following that event, had the Coop then properly effectuated the running of the continuation period by providing proper statutory notice, this Court could easily fix the date on which the thirty-six month period began. In this case, however, an *event*—a reduction in hours—occurred at one point in time, but the juncture at which Mr. Gaskell found himself in a position to lose health coverage, for purposes of the Coop's ERISA obligations, occurred at another point in time. This Court, then, must determine which of the two occurrences should be deemed the "original qualifying event."

On the facts of this case, the appropriate original qualifying event is not simply the point at which Mr. Gaskell experienced a

coverage as a result of his leave. Thus, the Court cannot determine whether his disability leave technically falls within the statutory definition of a "qualifying event," *see* 29 U.S.C. § 1163 (defining qualifying event as an event which *"but for* the continuation coverage required [by ERISA], would result in the *loss of coverage"*) (emphasis added), though the Court doubts that disability leave would, in fact, come within the definition. However, such a determination by this Court is not necessary to the disposition of defendants' motion here.

5. On December 19, 1989, Section 1162(2)(A)(v) was added, governing qualifying events involving Medicare specifically. The amendment extended the period of continuation coverage for events involving Medicare from thirty-six months from the date of the original qualifying event to thirty-six months *from the date of Medicare entitlement. See* Pub.L. No. 101–239 § 7862(c)(5)(B), 103 Stat. 2433 (1989). How-

ever, the amendment was applicable "to plan years beginning *after* December 31, 1989." Pub.L. No. 101–239 § 7862(c)(5)(C), 103 Stat. 2433 (1989) (emphasis added). As such, the amendment does not apply to the events in this case. Thus, the length of the continuation period in this case is governed by Section 1162(2)(A)(ii) concerning multiple qualifying events generally, which indicates that the thirty-six months runs from the date of the original qualifying event.

Contrary to plaintiffs' contention, this Court finds no support in the language of the statute or in the legislative history to suggest that the 1989 amendment would apply retroactively to 1988. In fact, in this Court's reading of the legislation, the subparagraph relied on by plaintiffs, § 7862(c)(6)(B), is a separate and unrelated amendment, the specific provisions of which have no bearing on the effective date of the amendment at issue in this case.

reduction in hours (albeit to zero) but rather the point at which Mr. Gaskell experienced a loss of coverage as a consequence of that reduction in hours. That point is, of course, determined by reference to the date on which the Coop would cease to pay for Mr. Gaskell's health coverage and the period of continuation coverage under ERISA would begin. That date, as set by the terms of the COBRA Form sent to Mr. Gaskell by the Coop, is July 1, 1988. To find otherwise would only erode the principle, emphasized above, that proper notice is an integral part of the ERISA statutory scheme and an integral part of the employer's responsibilities thereunder.

Given that Mrs. Gaskell became entitled to thirty-six months of coverage beginning July 1, 1988, the Coop was obligated to provide continuation coverage for her until July 1, 1991.

■ Both plaintiffs and defendants here move for judgment on Count I. Because this Court has established that the Coop was, in fact, obligated to provide health plan coverage to the Gaskells for a period beginning July 1, 1988 and ending July 1, 1991, and because the defendants ceased to provide such coverage in July, 1989, plaintiffs do have a valid ERISA claim. Thus, plaintiffs are entitled to judgment, and defendants' motion on Count I must fail.

However, defendants are liable to the Gaskells only for such sums as would be necessary to fulfill their contractual obligations under the Coop's health plan and to place the plaintiffs in the same position they would have been in had full continuation coverage been provided. Therefore, insofar as plaintiffs have reached a settlement agreement with Blue Cross and Blue Shield of Massachusetts ("Blue Cross") by which Blue Cross will cover 80 percent of all medical bills for services rendered from July 1, 1989 through the present and into the future, the Coop's liability on Count I is limited to an amount equal to the remaining 20 percent of all medical bills for servic-

es rendered between July 1, 1989 and July 1, 1991.[6]

## II. Extra–Contractual Remedies Under ERISA

■ Defendants move to dismiss Count II on the ground that the extra-contractual remedies sought in that count are unavailable under ERISA. Count II alleges that the Coop's termination of the plaintiffs' coverage constituted "willful, malicious, and reckless disregard" for plaintiffs' rights under ERISA, and plaintiffs specifically seek recovery of punitive damages.

The First Circuit has held expressly that "extra-contractual damages are unavailable" under ERISA. *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.1988); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that the comprehensive provisions of ERISA were intended to be the exclusive remedy for ERISA-plan participants). Clearly, the punitive damages sought in Count II, as well as the additional compensatory damages sought in Count I, are extra-contractual damages, because such damages are not within the policy terms of the Coop's ERISA-governed health plan. *Cf. Drinkwater*, 846 F.2d at 824 (noting that compensatory and punitive damages sought were not within terms of defendant's benefit plan). Plaintiffs, in fact, acknowledge that, under existing First Circuit precedent, they are unable to recover the relief which they seek. Nevertheless, they have asked this Court to depart from that precedent.

Plaintiffs rely on the Supreme Court's recent decision in *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), in which Justice O'Connor, in dicta, suggested that the relief sought by the plaintiffs in that case—relief which included compensatory and punitive damages—"was well within the power of federal courts to provide." *Id.* 111 S.Ct. at 486. Based solely on that language, the plaintiffs contend that this Court is not precluded from awarding ex-

---

**6.** In Count I, plaintiffs also seek certain extra-contractual remedies for emotional distress and loss of consortium. For the reasons set forth in detail in Part II of this Memorandum, those remedies are unavailable to plaintiffs on their ERISA claim.

tra-contractual relief, and they further request that the Court do so in this case.

This Court, however, cannot accept plaintiffs' argument. In this Court's view, had the Supreme Court intended to expand the realm of potential relief available under ERISA, and to essentially overrule its holding in *Pilot Life*, it would have done so explicitly. Such a departure from precedent likely would not have been accomplished in a single sentence, in dicta, at the close of an opinion focused exclusively on a wholly different issue.[7] Thus, unless and until the law clearly provides that extra-contractual damages are available under ERISA, this Court will not overrule an express holding of the First Circuit to the contrary. Because plaintiffs cannot recover the damages sought in Count II, defendants' motion for judgment on Count II is granted.

SO ORDERED.[8]

---

**7.** Precedent being an elemental principle of our jurisprudence, the Supreme Court would not overrule such established authority in an aside without any explication for its action. The fortress of precedent surrenders only to a direct assault and not to a shot fired in the dark.

**8.** Defendants also moved for judgment on Counts III, IV, V and X. Plaintiffs have waived Counts III, IV and V, however, so all three counts are dismissed.

Moreover, with respect to Count X this Court lacks sufficient information to make a definitive judgment at this time. Thus, both plaintiffs' and defendants' motions on Count X are denied.