

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-1994

# McPherson v. Emply'ees Pension Plan of Am. Re-Ins. Co.

Precedential or Non-Precedential:

Docket 93-5482

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"McPherson v. Emply'ees Pension Plan of Am. Re-Ins. Co." (1994). *1994 Decisions.* Paper 121.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/121

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 93-5482


PAUL F. MCPHERSON

Appellant

v.

EMPLOYEES' PENSION PLAN OF AMERICAN RE-INSURANCE COMPANY, INC.;
PENSION COMMITTEE OF EMPLOYEES' PENSION PLAN


On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 90-05019)


Argued March 4, 1994

BEFORE:   STAPLETON and SCIRICA, Circuit Judges, and
VAN ANTWERPEN, District Judge*

(Opinion Filed August 23, 1994)

Earl M. Bennett (Argued)
Glenn R. Gordon
William T. Knox, IV
HEROLD and HAINES
25 Independence Boulevard
Warren, New Jersey 07059
Attorneys for Appellant

Edward R. Gallion (Argued)
Alexandre A. Montagu
SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004
Attorneys for Appellees

* Honorable Franklin S. Van Antwerpen, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Attorneys' fees may be awarded to prevailing parties in actions brought under the Employee Retirement Income Security Act of 1974 ("ERISA"). The statute, however, provides no standard for a fee award, stating only that "the court in its discretion may allow a reasonable attorney's fee and costs of action." 29 U.S.C. § 1132(g)(1). To guide district courts as they exercise their discretion in connection with such fee applications, we have set forth five factors that must be considered:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).[1] We have further instructed that there is no presumption that a successful plaintiff in an ERISA suit should receive an award in the absence of exceptional circumstances. Ellison v. Shenango, Inc. Pension Bd., 956 F.2d 1268, 1273 (3d Cir. 1992). Finally, we have directed that a district court, when ruling on an application for attorneys' fees in an ERISA case, should articulate its analysis and conclusions as it considers each of the five Ursic factors. See Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1012 (3d Cir. 1992). This appeal requires us to further discuss the standard for awarding attorneys' fees in ERISA cases.

## I.

American Re-Insurance Company ("the Company") fired its comptroller, Paul F. McPherson, on July 29, 1983. McPherson's last day of work was August 12, 1983, although his salary and benefits continued through February 16, 1984. McPherson attributes his dismissal to personal differences with two senior executives.

McPherson had worked at the Company since 1959 and was a vested participant in the Employees' Pension Plan of American

---

[1]. See also Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1011 (3d Cir. 1992); Schake v. Colt Indus. Operating Corp. Severance Plan, 960 F.2d 1187, 1193 (3d Cir. 1992); Bell v. United Princeton Properties, Inc., 884 F.2d 713, 724-25 (3d Cir. 1989); Monkelis v. Mobay Chemical, 827 F.2d 935, 936 (3d Cir. 1987); Groves v. Modified Retirement Plan, 803 F.2d 109, 119-20 (3d Cir. 1986).

Re-Insurance Company ("the Plan"), a single-employer defined-benefit plan, which was qualified under 26 U.S.C. § 401(a). McPherson had various options for receiving his Plan benefits, among which was a lump-sum distribution of $182,837 when he turned 55 on January 8, 1987. Lump-sum distributions needed the approval of the Pension Committee of Employees' Pension Plan ("the Committee"), which was required by § 6.4 of the Plan to evaluate requests in "a uniform and nondiscriminatory manner."

McPherson wrote a letter to a member of the Committee in October 1986, in which he asked whether "the lump sum option is available to me." McPherson was told in a letter dated November 5, 1986, that "a lump sum is available to eligible participants" and that "[e]ligibility includes proof of good health, financial stability, etc." McPherson wrote back on December 11, 1986, offering to provide any necessary information. A Committee member sent a letter to McPherson on December 29, 1986, which specified the proof of health and financial stability that the Committee would require, but cautioned "that a lump sum benefit has never been granted to anyone under the age of sixty-two." McPherson submitted the requested documentation to the Committee on January 19, 1987.

McPherson's request to the Committee for a lump-sum distribution was the tenth since 1974; the Committee had approved the nine others. In considering the nine previous requests for lump-sum distributions, the Committee had sometimes looked to two criteria: good health and financial stability on the part of the applicant. The good health requirement was said to be designed

to prevent a selection pattern that might undermine the financial stability of the Plan -- a pattern in which terminally ill participants would request distributions on their deathbeds while healthy participants would not request distributions and continue to receive benefits throughout their lengthy retirements.  The financial stability requirement aimed to ensure that beneficiaries had sufficient sophistication to manage a lump-sum distribution.

The Committee informed McPherson in a letter dated April 10, 1987, that it had denied his request for a lump-sum distribution.  The Committee explained that "lump sum benefits will only be granted to those qualified participants at the time of retirement from active employment," and McPherson was thus ineligible because he still held the job that he had taken after the Company fired him in 1983.

McPherson renewed his request for a lump-sum distribution on June 29, 1990.  The Committee denied his request on October 23, 1990, saying that lump-sum distributions were available only to employees who retired directly from the Company when they were older than 55.

McPherson brought suit in district court under ERISA against the Plan and the Committee to obtain a lump-sum distribution on December 18, 1990, and was granted summary judgment on October 16, 1992.  The district court concluded that the denial of McPherson's request for a lump-sum distribution was "arbitrary and capricious" and not "supported by a rational explanation."  As the district court later wrote:

[D]efendants. . . provided [the court with] essentially three reasons for the Committee's decision denying . . . plaintiff from receiving lump sum benefit payments . . . : (1) the potentially destabilizing effect on Plan assets; (2) . . . allowing more employees to receive lump sums would undermine the Plan's investment strategy; and (3) . . . allowing "non-retiring" employees to receive their benefits in lump sums would contravene the primary purpose of the Plan which was to provide post-retirement income.

Th[is] Court concluded that the Committee's concerns regarding the Plan's solvency and investment strategy were unsupported when viewing the overall size and financial soundness of the Plan. Th[is] Court also found that the Committee's goal of providing post-retirement income would not be undermined by providing lump sum benefits to retirement aged participants who had left the company earlier in their careers.

McPherson sought attorney's fees and costs. After setting forth the five Ursic factors, the district court denied McPherson's motion with the following comments:

There is no indication that the Committee acted in bad faith in denying plaintiff's lump sum benefit request, thus there appears to be no need to deter such conduct by defendants. Although the Court's inquiry into the Committee's decision-making process revealed that its decision was unsupported by the record, that inquiry did not reveal any sinister motive which led to the Committee's improper determination.

It also appears that plaintiff's success was neither intended to benefit other Plan members, nor will it do so in the future. Subsequent to plaintiff requesting a lump sum benefit, the section of the Plan governing lump sum payments was amended, thus (1) restricting lump sum payments to employees who "retire directly" from the Company . . .;

and (2) removing the discretion of the
Committee to approve or reject such requests.

Furthermore, the Committee's decision,
made in response to a novel situation, was
not so clearly lacking in merit to warrant
the imposition of fees.

Although it is clear that defendants
could easily pay plaintiff's attorneys' fees,
that lone factor does not justify such an
award.

The district court thus concluded that the sole Ursic factor
favoring an award was the ability of the defendants to pay; the
other fours factors counseled against an award.

McPherson now appeals. Subject matter jurisdiction
exists under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and
appellate jurisdiction under 28 U.S.C. § 1291. "An award of
. . . attorneys' fees to a prevailing plaintiff in an ERISA case
is within the discretion of the district court and may only be
reversed for abuse of discretion." Schake v. Colt Indus.
Operating Corp. Severance Plan, 960 F.2d 1187, 1190 (3d Cir.
1992). "Our review of the legal standards a district court
applies in the exercise of its discretion is, however, plenary."
Ellison v. Shenango Inc. Pension Bd., 956 F.2d 1268, 1273 (3d
Cir. 1992).

II.

Both McPherson and the Plan agree that the second Ursic
factor -- "the ability of the offending parties to satisfy an
award of attorneys' fees" -- favors an award. As for the fourth
Ursic factor -- "the benefits conferred on members of the pension

plan as a whole" -- the district court quite properly regarded this factor as weighing against McPherson. The fourth factor requires consideration of the benefit, if any, that is conferred on others by the court's judgment. Before McPherson began his lawsuit, the Plan was amended to limit lump-sum distributions to participants who retired directly from the Company and to eliminate the Committee's discretion to approve or deny lump-sum distributions. McPherson's suit thus held out no possibility of benefit to other similarly situated Plan members because there were, and would be, no other similarly situated Plan members.

III.

We thus find no fault with respect to the district court's application of the second and fourth Ursic factors. There is an error of law, however, that infects the remainder of the district court's analysis. As we read the district court's comments, they appear to reflect a view that the first, third, and fifth factors cannot favor an award in the absence of a finding that the defendants have acted with a "sinister motive," i.e., that they have acted in "bad faith." We conclude that this view is inconsistent with the analysis contemplated by Ursic and that a proper Ursic analysis in this case might result in an award to McPherson.

The district court concluded that the first Ursic factor -- "the offending parties' culpability or bad faith" -- did not favor an award of attorneys' fees because "[t]here is no indication that the Committee acted in bad faith in denying

plaintiff's lump sum benefit request." McPherson insists that the district court applied an incorrect legal standard: under Ursic, attorneys' fees may be awarded where there was "culpability or bad faith," but the district court only considered whether there was bad faith. We agree.

The first Ursic factor favors an award to the prevailing party not only in cases involving "bad faith" but in other cases as well. As the district court recognized, bad faith normally connotes an ulterior motive or sinister purpose. Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986). A losing party may be culpable, however, without having acted with an ulterior motive. In a civil context, culpable conduct is commonly understood to mean conduct that is "blameable; censurable; . . . at fault; involving the breach of a legal duty or the commission of a fault. . . . Such conduct normally involves something more than simple negligence. . . . [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose." Black's Law Dictionary (6th ed. 1990). Thus, in Vintilla v. United States Steel Corp. Plan, 642 F. Supp. 295, 296-97 (W.D. Pa. 1986), aff'd, 815 F.2d 697 (3d Cir. 1987), cert. denied, 484 U.S. 847 (1987), for example, the court concluded with respect to the first Ursic factor: "While we cannot ascribe bad faith to plaintiffs' efforts, we do find certain elements of culpability attributable to plaintiffs." Indeed, this court in Groves v. Modified Retirement Plan, Inc., 803 F.2d 109 (3d Cir. 1986), found an award of counsel fees to be appropriate in an

ERISA case without finding that the defendants had acted with an ulterior or sinister purpose.

A party is not culpable merely because it has taken a position that did not prevail in litigation. Nevertheless, if the district court in this case had asked both whether the Committee had acted in bad faith and whether it had acted with culpability, we believe it might have concluded that the first prong of Ursic favored an award to McPherson.

Two members of the Committee testified in depositions that they denied McPherson's lump-sum distribution because they feared that it would threaten the Plan's financial stability. If this testimony did not reflect bad faith, it at least reflected a breach of the Committee's fiduciary duty to remain informed concerning the financial condition of the Plan. The Plan in fact was overfunded and easily could have accommodated McPherson's request and the requests of others similarly situated. As the district court found:

> [A]t the end of 1987, the year plaintiff's initial request was rejected, the total accrued benefits owed to all participants was $17,940,000, while the Plan's assets stood at $43,782,134. Indeed, when plaintiff submitted his lump sum request during 1987 his $182,382 benefit amount constituted only .53% of the Plan's assets as of the beginning of the year. As for the potential for paying other lump sums to similarly situated participants, the Plan could have immediately paid lump sums to all vested terminated participants, whether or not they had reached age 55, and used less than one-half of the Plan's $2,524,941 of interest and dividend income for 1990 or about 2.7% of the Plan's assets.

The Committee also misrepresented to McPherson its past experience with applications for lump-sum distributions. In a letter dated December 29, 1986, McPherson was told that "a lump-sum benefit has never been granted to anyone under the age of sixty-two"; the district court found that two plan participants had received lump-sum distributions when they were 58. In a letter dated April 10, 1987, McPherson was informed that "lump sum benefits will only be granted to those qualified participants at the time of retirement from active employment"; in 1984, the Committee approved a lump-sum distribution to a participant who had left the Company for another job.

One Committee member attributed his opposition to McPherson's request to the Plan's terms, which he incorrectly understood to ban lump-sum distributions to participants who had not retired. Although § 6.2 of the Plan required the Committee to evaluate requests for lump-sum distributions in "a uniform and nondiscriminatory manner," a Committee member admitted in a deposition that the Committee had no written rules on lump-sum distributions and sometimes used different criteria to evaluate requests for lump-sum distributions. Three Committee members admitted in deposition that they were hostile to all lump-sum distributions, despite the Plan's explicit provision for them. All but one Committee member who participated in the 1987 decision to deny McPherson's request did not vote in person or send a written proxy, as § 9.2 of the Plan required. After the Committee denied McPherson a lump sum distribution in 1987, it failed to inform him of his right to appeal, as 29 U.S.C. § 1133

required.  All members of the Committee had a fiduciary duty to be aware of the provisions of the Plan and to administer it in accordance with its terms.

Finally, we note that this case does not appear to involve a simple lapse of judgment or care on the part of the defendants.  McPherson's two requests for lump-sum distributions and his lawsuit provided the defendants with repeated opportunities over a six year period to formulate and reevaluate their position in light of the terms of the Plan and its financial condition.  Each opportunity, however, appears to have produced nothing more than new rationales for their ultimately unsustainable conclusion.  Considerable evidence, then, suggests that the defendants may have been guilty of culpable conduct when they repeatedly denied McPherson's request for a lump-sum distribution.  If so, the first Ursic factor weighs to some degree in favor of an award of attorneys' fees.  The weight to be given this factor in the overall Ursic analysis will, of course, depend on the district court's appraisal of how wrongful any culpable conduct was.

IV.

A similar difficulty exists with the district court's analysis of the third Ursic factor -- "the deterrent effect of an award of attorneys' fees against the offending party." The district court concluded that "there appears to be no need to deter such conduct by the defendants" because "[t]here is no indication that the Committee acted in bad faith." We find this reasoning flawed.

We believe it will further the objectives of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct. See Kann v. Keystone Resources, Inc. Profit Sharing Plan, 575 F. Supp. 1084, 1096-97 (W.D.Pa. 1983) (in case in which "culpability . . . has been shown," fee award will make plan "less likely and not so quick to deny benefits to other participants" and thus be "a deterrent factor"). Even if the Committee did not act in bad faith, the district court should have considered whether it would serve the objectives of ERISA to award counsel fees in an effort to deter conduct of the kind in which the Committee engaged.

The district court's failure to distinguish between culpability and bad faith also may have affected its analysis of the fifth Ursic factor -- "the relative merits of the parties' positions." The district court opinion can be read to reflect a view that the fifth Ursic factor weighs in favor of an award only in those situations where the positions taken by the defendants in the litigation have been so meritless as to evidence bad faith. As with the first Ursic factor, the fact that the

defendants' positions have not been sustained does not alone put the fifth factor in the column favoring an award. Nevertheless, we believe there will be cases in which the relative merits of the positions of the parties will support an award even in the absence of bad faith litigating.

V.

We express no opinion as to whether attorneys' fees should be awarded to McPherson. That will be for the district court to decide on remand based upon the sound exercise of its discretion. We hold only that the district court used an incorrect legal standard to evaluate McPherson's request for attorneys' fees. When analyzing the first Ursic factor, it considered only whether the defendants acted in bad faith, not whether they acted culpably, and, if so, what was the degree of their culpability. Similar misunderstandings appear to have infected the district court's analysis of the deterrent effect of an award of attorneys' fees and its evaluation of the relative merits of the parties' positions.

We will reverse the district court's order denying attorneys' fees and costs and will remand for further proceedings consistent with this opinion.