**Alfred DISABATINO, Plaintiff,**

v.

**DISABATINO BROTHERS, INC., Debro Inc., Debro Concrete, Inc., and Ralph J. Patrone, Defendants.**

**Civ. A. No. 94–393–JLL.**

United States District Court, D. Delaware.

July 25, 1995.

---

David J. Margules of Klehr, Harrison, Harvey, Branzburg & Ellers, Wilmington, DE, for plaintiff.

Jeffrey M. Weiner, Wilmington, DE, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Plaintiff Alfred DiSabatino complains that the defendants violated various provisions of the Comprehensive Omnibus Budget Reconciliation Act ("COBRA"), specifically those codified at 29 U.S.C. §§ 1161–68, which amended the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Presently before the Court are plaintiff's motion for partial summary judgment, (Docket Item ["D.I."] 25), and defendants' motion for summary judgment. (D.I. 29.) For the reasons stated below, the Court will grant plaintiff's motion, grant defendants' motion in part and deny it in part, and award to plaintiff a statutory penalty and his reasonable attorneys' fees incurred in conjunction with this action.

### II. FACTS

Defendants, DiSabatino Brothers, Inc., Debro, Inc., and Debro Concrete, Inc., are construction companies that are managed and operated as a single business ("Family Companies"). (D.I. 32, Ex. A.) Although the precise division of ownership is not pertinent for the purposes of this lawsuit, the four living DiSabatino brothers, Frank, Michael, Paul, and Alfred (the plaintiff), own equity in the Family Companies. (D.I. 30 at 3, D.I. 32 at 5.) Defendant Ralph J. Patrone is the Comptroller of the Family Companies, and does not own stock in any of the Family Companies. (D.I. 27 at 10.)

In May or June of 1993, Alfred had a fight with his brother Michael while the family was gathered at the home of their recently deceased mother. As a result of that fight, Frank, in his capacity as president of the Family Companies, told Alfred he was fired. (D.I. 1, ¶ 8, D.I. 30 at 5.) In spite of Alfred's termination, the Family Companies continued to pay the premiums for Alfred's health insurance. (D.I. 1, ¶ 8 & D.I. 30, Ex. G.) However, Alfred claims he was not aware that he was still covered by his health insurance, so he avoided seeking some medical treatment, and did not submit claims for reimbursement for medical expenses he did incur. (D.I. 33, ¶¶ 20–21.) However, in spite of his belief that he was not covered, Alfred presented his insurance card to the emergency room staff of St. Francis Hospital when his wife suffered a stroke in April, 1994. (*Id.,* ¶ 23.)

Shortly thereafter, in May of 1994, Michael directed Ralph Patrone to stop paying Alfred's health insurance premiums, and to advise Alfred of this. (M. DiSabatino Dep. at 50–52, Patrone Dep. at 43–45, D.I. 32, Ex. A.) On May 26, 1994, while Alfred was in the offices of the Family Companies, Ralph Patrone hand-delivered a letter to him, which was signed by Patrone and bore that date ("First Letter"). It reads as follows:

This letter will constitute notice to you that you have the right to continue to

participate in the Company's Blue Cross Health Care Plan for the period of eighteen months from the date of your termination, which for purposes of this letter we will consider to be June 30, 1993. Your participation will be at your expense and failure to make the monthly payments will be grounds for terminating your participation in the plan.

The monthly payments are $761.92. Please remit your monthly check to my attention in that amount, beginning immediately.

Finally, the Company has paid the Blue Cross premiums on your behalf for the months of July–May, 1994 [*sic*], for a total of $8,739.62. Accordingly, please also send a check in that amount to my attention to cover these past payments.

(D.I. 1, Ex. A.) Counsel for Alfred wrote to Frank DiSabatino on July 1, 1994, and among other things, stated his position that Patrone's letter violated various COBRA provisions. (*Id.*, Ex. B.) Counsel for the Family Companies responded that the claimed violations of COBRA were baseless. (D.I. 1, Ex. C.) In response, Alfred filed his complaint in this Court on July 20, 1994, which the defendants answered on August 10, 1994. A letter dated August 29, 1994, signed by Patrone, (D.I. 30, Ex. O.), was hand delivered to Alfred's counsel on September 2, 1994 ("Second Letter"). (*Id.*, Ex. P.) It is a much lengthier letter which details Alfred's rights to continuation coverage under COBRA. Alfred's counsel responded that he believed the August 29th notice still did not comply with COBRA's requirements. (D.I. 34, Ex. A.) Although he mentioned several defects in that letter, he only alleges in the briefs filed in connection with these motions two defects: (1) it was not delivered to Alfred and his wife individually; and (2) it was untimely. (D.I. 32 at 9, D.I. 26 at 6.) So plaintiff essentially concedes that aside from these two defects, the Second Notice comports with COBRA's notice requirements. Therefore, due to its length and the fact that these two defects do not concern the substance of the letter, it does not bear reprinting here. However, it is important to note that the letter stated that the continuation period would last for eighteen months from the date of that letter. (D.I. 30, Ex. O.)

## III. DISCUSSION

Plaintiff's motion for partial summary judgment asks this Court to (1) find that defendants violated COBRA, and (2) reserve jurisdiction to hold a subsequent hearing on plaintiff's damages and other appropriate relief. (D.I. 26.) Defendants' response is essentially the same as the first argument they make in their motion for summary judgment, so the Court will move on to the arguments raised in the parties' briefings on that motion.

In their brief in support of their motion for summary judgment, the defendants first argue that plaintiff can show no damages which resulted from the defendants' failure to provide legally sufficient notice. They next argue that plaintiff's claim for extracontractual compensatory and punitive damages must fail because ERISA does not provide for either. And finally, the defendants request that this Court award them their attorney's fees. (D.I. 30.)

In response, plaintiff first argues that no proper notice has been provided by the defendants, so the election and continuation periods have not ended. Second, plaintiff argues that he and his wife had foregone needed medical care for a period of nearly a year after he was fired because he believed he had no health insurance, and that he suffered compensable injury as a result. Last, he argues that no injury, prejudice, or harm must be shown in order for this Court to assess the civil penalties authorized by ERISA and that this Court should award him his attorneys' fees. (D.I. 32.)

In reply, the defendants argue that the continuation period is over because the maximum period that COBRA requires is eighteen months, and that period elapsed some time ago. Second, they argue that plaintiff has neither sufficiently pleaded nor demonstrated his damages due to his foregone medical treatment. And finally, they urge this Court not to be the first federal court to assess that statutory penalty and award attorneys' fees against an employer who paid for an employee's medical insurance for a

period exceeding the minimum eighteen months' continuation period required by law. Instead, they argue that plaintiff should be ordered to pay their attorneys' fees. (D.I. 40.)

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The appropriate inquiry is whether there is a need for a trial. "In other words, [are] there any genuine factual issues that properly can be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making this determination, the Court views the facts in the light most favorable to the nonmoving party. *Hollinger v. Wagner Mining Equip. Co.*, 667 F.2d 402, 405 (3d Cir.1981). Only those disputes over facts which, according to the governing substantive law, might affect the outcome of the case properly preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. So where the substantive law affords no recovery even where certain facts exist, summary judgment against the party basing a claim on those facts is appropriate. *See id.*

COBRA requires that an employer provide an employee with the option of electing continuation coverage under the same terms of the employer's health plan after some qualifying event which would otherwise end the employee's health insurance coverage. 29 U.S.C. § 1161. Among the qualifying events, and the one relevant to this case, is termination of employment. 29 U.S.C. § 1163(2). This continuation period must last for at least eighteen months. 29 U.S.C. § 1162(2)(A)(i). And, with certain restrictions not now relevant, the employer may require the employee to pay the premiums during that period. Furthermore, the plan administrator is obligated to notify the employee of his or her option to elect continuation coverage no later than forty-four days after termination of employment. *See* 29

U.S.C. §§ 1166(a)(4), & (c). The employee then has sixty days from the date of that notice in which to decide whether or not to elect continuation coverage. 29 U.S.C. § 1165(1).

ERISA provides for civil enforcement actions. 29 U.S.C. § 1132. The provision at issue here is 29 U.S.C. § 1132(c)(1) ("§ 1132(c)(1)"). It provides, in pertinent part:

Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title ... with respect to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure ..., and the court may in its discretion order such other relief as it deems proper.

The Court now turns to the arguments presented by the parties.

In his complaint, plaintiff argues that the defendants should permanently provide him with health insurance coverage at least as favorable to that which existed on May 31, 1994, the date of the First Letter. (D.I. 1, ¶ 14.A.) In his brief in opposition to defendants' motion for summary judgment, he also argues that the defendants are estopped from arguing that the continuation period ends before March of 1996 because that would be the end of the eighteen months' period offered in the Second Letter. (D.I. 32 at 10.) Although different remedies based on different legal theories, plaintiff is entitled to neither because they both suffer from the same foundational fault: an award of either would require this Court to go well beyond the intent of Congress expressed in COBRA.

The purpose of the civil enforcement provisions of COBRA is to put the plaintiff in the same position he would have been in but for the violation. *Van Hoove v. Mid–America Bldg. Maintenance, Inc.*, 841 F.Supp. 1523, 1536 (D.Kan.1993); *Phillips v. Riverside, Inc.*, 796 F.Supp. 403, 411 (E.D.Ark. 1992); *Gaskell v. Harvard Coop. Soc'y*, 762 F.Supp. 1539, 1543 (D.Mass.1991), *vacated on other grounds*, 3 F.3d 495 (1st Cir.1993). Furthermore, the Third Circuit has "re-

peatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in [29 U.S.C. § 1132(c) ]." *Ackerman v. Warnaco, Inc.,* 55 F.3d 117, 124 (1995) (collecting cases). In that case, the plaintiffs alleged that their employer ended a termination allowance policy (severance pay) without giving the proper 210–day notice before the end of the plan year in which the termination of the plan occurred. As a result of this failure to provide the notice mandated by ERISA, the plaintiffs argued that the district court should have voided the employer's rescission of the termination allowance policy. *Id.* at 122. The district court declined to void the rescission and the Third Circuit affirmed. In doing so, the appellate court held that the only remedy to which the employees were entitled were those provided for in § 1132(c). *Id.*

■ Although *Ackerman* involved the alleged violation of a different (non-COBRA) ERISA notice requirement, the broad principle is applicable in this case as well: courts in this circuit should be reluctant to award extraordinary remedies that put the plaintiff in a better position than he would have been in had the employer complied with ERISA's notice requirements, including those added by COBRA. Accordingly, an employer's defective notice—or lack of notice altogether— cannot be a basis for extending the minimum eighteen months' continuation period to anything akin to nearly thirty-four months much less permanently, absent extraordinary circumstances.

The general proposition is evident in *Phillips* as well, where the court held that the plaintiff was entitled to reimbursement for medical expenses he incurred during the eighteen months after his termination, minus deductibles and premium fees. 796 F.Supp. at 411. Part of the relief the plaintiff there sought was a declaration from the court that the COBRA election period would run from the date of judgment, rather than the date of his termination, because he had never received adequate notice. *Id.* at 404–05. The court declined to so hold, finding that the election period ran from the date of the

qualifying event—his termination—for eighteen months: October 6, 1989 to April 6, 1991. *Id.* at 411.

Contrary to plaintiff's assertion, *Phillips* does not stand for the proposition that the continuation period begins only with proper notice. (D.I. 32 at 14.) Rather, it is completely consonant with this Court's holding that the statutorily imposed period of eighteen months from the date of the qualifying event is the limit of the legally mandated employer's liability and normally should not be expanded. *See also Gaskell v. Harvard Coop. Soc'y,* 3 F.3d 495, 498 (1st Cir.1993), *vacating in part Gaskell v. Harvard Coop. Soc'y,* 762 F.Supp. 1539 (D.Mass.1991) (holding that the date of the qualifying event rather than the date of the actual loss of coverage is the date on which the continuation period begins). In sum, plaintiff's continuation period has ended and the defendants are relieved of the duty of offering the option of continuation coverage to plaintiff.

■ Turning next to plaintiff's argument that he has suffered compensable damages because he has foregone needed medical care, the Court holds, as a matter of law, that plaintiff is not entitled to damages based on this measure. The only evidence of the damages presently before the Court is an affidavit filed in conjunction with the briefing on these motions. It states that he has lived with a great deal of back pain due to his perceived inability to afford the proper medical treatment and that he declined to purchase prescription drugs for his "blood pressure and other medical problems." (D.I. 33, ¶ 18.) He does not argue that he suffered any permanent worsening of any medical condition which is a result of forgoing this medical care during the continuation period, a theory of damages arguably compensable under § 1132(c). *See Phillips,* 796 F.Supp. at 411. Therefore, plaintiff's argument amounts to a claim for pain and suffering which could have been alleviated, and likely would have been alleviated, had he sought treatment during the continuation period. Arguably, compensating for this pain and suffering fairly fits within the goal of putting the plaintiff in the same position he would have been in had the employer not violated

COBRA. This Court, however, is unprepared to go a step beyond what other courts have done in the past in the name of making the plaintiff whole and allow a terminated employee to recover for such speculative damages. Although this Court is not making any judgment as to the sincerity of this plaintiff's claims that he was in pain and that the pain would have been alleviated had he sought medical treatment, such a theory of damages would be prone to abuse in the future. The Court believes it is prudent and most in line with *Ackerman* and its progeny that such a claim fails as a matter of law. *See Ackerman,* 55 F.3d at 124–25.

Turning next to plaintiff's generic claim for punitive damages (D.I. 1, ¶ 14.D), plaintiff has not answered the defendants' argument for summary judgment on this issue. Accordingly, summary judgment is appropriate for the defendants.

The next issue involves the appropriateness of the penalty authorized by § 1132(c)(1).[1] As shown above, that subsection provides for the Court to assess a penalty of up to $100 a day. Since it is uncontested that defendants failed to provide the required notice of the availability of continuation coverage within forty-four days of plaintiff's termination, defendants violated § 1166(1). Therefore, plaintiff is eligible for an award of a penalty according to § 1132(c). The defendants, nonetheless, urge this Court not to be the first federal court to impose a penalty where an employer has gratuitously provided an employee and his spouse with health care coverage from the date he was terminated, and continues to do so to date. Plaintiff, on the other hand urges this Court not to countenance violations of federal law by allowing employers and plan administrators to ignore COBRA's notice requirements. Although this Court does not relish the prospect of being the first to impose a civil penalty in situations such as the present

case, it relishes even less the prospect of abandoning its duty, and long-standing practice, of requiring adherence to federal law.

■ Although the Third Circuit has not addressed this precise issue, its decision in *Gillis v. Hoechst Celanese Corp.* is instructive. 4 F.3d 1137 (1993). There the district court assumed, without deciding, that the defendant had violated non-COBRA reporting and disclosure requirements of ERISA. That court, however, refused to grant the requested relief, an injunction instructing the company to comply with those requirements and an award of the statutorily authorized penalty. The court believed that the plaintiffs' failure to demonstrate harm due to the nondisclosure precluded it from awarding any relief. *Id.* at 1148. The Third Circuit disagreed, holding that a plan participant need not show harm before he or she is entitled to an injunction requiring compliance with ERISA's reporting and disclosure requirements. Accordingly, the Third Circuit vacated that portion of the district judge's grant of summary judgment to the defendant pension plan and remanded the case for reconsideration in light of the proper legal standard. *Id.* More relevant here is the fact that the Third Circuit stated that the district court also had discretion to award the statutory penalty regardless of the fact that the plaintiffs were not harmed by the nondisclosure. *Id.* Therefore, it is appropriate for a district court to award the statutory fines as a sanction for pure noncompliance with ERISA, and not only where the plaintiff has sustained actual harm.[2]

■ The Eleventh Circuit has addressed a similar issue and similarly held. *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488, 1494–95 (11th Cir.1993). In that case, the plaintiff properly sought a statement of her accrued benefits. ERISA requires a plan administrator to comply with such requests within thirty days. The administrator, however, did not

---

1. Plaintiff appears to have abandoned his claim for a fine pursuant to 29 U.S.C. § 1132(c)(3) and in any event has alleged no facts in his complaint which would entitle him to relief under that subsection in his complaint. Accordingly, summary judgment for defendants is proper on that claim as well.

2. The Court hastens to add that it is not holding that plaintiff suffered no injury as a result of the defendants' noncompliance, rather, it has only held that plaintiff has not demonstrated a legally cognizable injury as a result of the defendants' failure to notify him of his right to continuation coverage.

supply the statement until one year after the request. *Id.* at 1494. The appellate court rejected the district court's conclusion that the statutory penalty is only available where the plan participant shows prejudice. Indeed, it held that, under the circumstances of that case, it was error for the district court not to impose some penalty. *Id.* at 1494–95. In doing so it made two key observations: (1) plan participants would rarely be able to show prejudice as a result of an untimely statement of accrued benefits, so Congress could not have intended for prejudice to be a requirement; and (2) the penalty range of up to $100 a day is unrelated to a plan participant's injury and is, instead, intended to punish noncompliance and not to compensate. *Id.* Accordingly, this Court believes it is compelled to impose a penalty as provided for in § 1132(c).

The next question concerns the appropriate amount of the penalty. Plaintiff requests this Court to award the maximum amount, $100 a day, from June 30, 1993 to the date of final judgment. (D.I. 1, ¶ 14.C.) The defendants do not offer an alternative formula, but instead rely on their argument that this Court should award no penalty at all. The Court of course has decided to grant some relief, so the defendant's formulation does not help, while plaintiff's formulation gives too much. Accordingly, the Court must figure a different one.

Section 1132(c)(1) authorizes the assessment of the civil penalty to commence with the date of the violation. Thus, the Court's first task is to determine that date. Plaintiff states in his complaint that he was fired in June of 1993, but does not give a specific date. (D.I. 1, ¶ 8.) However, since he asks for the penalty to run from June 30, 1993, in his complaint, the Court takes that as his concession that his termination (and thus the qualifying event) occurred on that day. Furthermore, the defendants' Second Letter states that the Family Companies consider that date to be plaintiff's termination date. Using that date, the defendants were not in violation of the law until forty-four days later, or August 14, 1993. *See* 29 U.S.C. §§ 1166(a)(4), & (c). As the continuation period must only last for eighteen months,

that is the appropriate upper limit in this case, and not the date of final judgment. For if the defendants' opportunity to comply with the COBRA notice requirements were forever lost after the expiration of the forty-four day deadline, they would necessarily lose any opportunity to rectify their wrong after that deadline passed. Certainly Congress's intent in providing that liability accrue on a daily basis was to encourage even dilatory compliance, and not provide a windfall for plan beneficiaries.

In light of these considerations, it is apparent that the First Letter, dated May 26, 1994, constituted defective notice, so the defendants remained in violation of COBRA's requirements past that date. However, defendants cured this defect—for purposes of determining the penalty—with the Second Letter which is dated August 29, 1994, by hand-delivering it to plaintiff's counsel on September 2, 1994. This is notwithstanding plaintiff's contention that he and his wife must be notified directly. For courts have held that the notice must only be a good faith attempt to notify the beneficiaries, not that it is actually put in their possession. *Conery v. Bath Assocs.*, 803 F.Supp. 1388, 1399 (N.D.Ind.1992) (notice via first class mail sent to last known address sufficient); *Truesdale v. Pacific Holding Co./Hay Adams Div.*, 778 F.Supp. 77, 81–82 (D.D.C. 1991) (same). Surely notice hand-delivered to plaintiff's attorney is a good faith attempt to notify.

As this Court takes judicial notice of the fact that 1994 was not a leap year, the Court concludes that the defendants were in violation for 384 days (365 plus 19). This Court further finds that a penalty of $10 per day is appropriate. Thus, the total penalty is $3840.00.

Finally, the Court must next consider whether to award either side its attorneys' fees. Although apparently unknown to any of the parties, the Third Circuit has adopted a five-part test in order to guide the district courts in this circuit in exercising their discretion whether to award attorney's fees in ERISA cases. *McPherson v. Employees' Pension Plan*, 33 F.3d 253, 254 (3d Cir.1994) (quoting *Ursic v. Bethlehem Mines*, 719 F.2d

670, 673 (3d Cir.1983)). Those five factors are as follows:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the [health][3] plan as a whole; and

(5) the relative merits of the parties' position[s].

*Ursic,* 719 F.2d at 673, *quoted in McPherson,* 33 F.3d at 254.

Turning to the first factor, the Third Circuit made clear in *McPherson* that no "bad faith" or ulterior motive must be shown. 33 F.3d at 256. Rather, for the first factor to favor an award of attorneys' fees, all that need be shown is some sort of "culpable" or "blameable" conduct. *Id.* at 257. Here, the defendants' First Letter constituted inadequate notice under COBRA. When plaintiff's attorney sent a letter to the defendants advising of the defectiveness of the notice, the defendants' response was that plaintiff's claims were without merit. It was not until after plaintiff filed this lawsuit that the defendants saw fit to comply with the COBRA requirements by issuing the Second Letter. This, in addition to the fact that the notice requirements, while requiring some page-turning in the United States Code, are reasonably comprehensible and unambiguous, leads this Court to find that the defendants' conduct in this situation is blameworthy.

Second, the defendant Family Companies, a group of successful construction businesses, appear to have the assets to pay plaintiff's attorneys' fees. (*See* M. DiSabatino Dep., D.I. 32, Ex. A at 24–27 (the Family Companies own approximately one million dollars' worth of construction equipment).) Third, this Court believes that the award of attor-

neys' fees will have a significant deterrent effect on the defendants which will encourage them to observe relevant federal law until the parties resolve all of the issues between them. Furthermore, the defendants are more likely to comply with ERISA's requirements in the future. The fourth factor does not support an award, however. As recently observed by Judge Schwartz, a member of this Court, if the result of the present lawsuit does not effect a change in the administration of the plan which will benefit other participants at this time, that benefit must be in the future, and then this is really the deterrence effect already considered in applying the third factor. *Hamilton v. Bank of New York,* C.A. No. 94–436, slip op. at 11, 1995 WL 447659 (D.Del. July 18, 1995). As plaintiff alleges wrongful conduct directed only to him and no other plan participants, the Court can see no immediate benefit to the other plan participants. Finally, the fifth factor points towards an award as well: as discussed above, the plaintiff was forced to file this lawsuit in order to enforce his rights under ERISA and COBRA, while the defendants offer no excuse for their non-compliance with federal law. Additionally, defendants' position communicated in the First Letter regarding plaintiff's obligations if he wanted to continue his health benefits, a position they adhered to from the date of that letter through the filing of the lawsuit, was completely baseless.

■ Therefore, the Court concludes that plaintiff is entitled to an award of his reasonable attorneys' fees. The Court will order plaintiff's attorneys to file an affidavit detailing those fees, and will make an award based on that affidavit then.

## IV. CONCLUSION

Based on the foregoing, the Court will grant plaintiff's motion for summary judgment[4], grant defendant's motion for summary judgment in part, and deny it in part.

---

**3.** The *Ursic* and *McPherson* courts used "pension" rather than "health" because the issues before them involved pension plans rather than a health care plan. 33 F.3d at 254–55. However, this Court does not believe that this distinction makes a difference, and that this is the proper test in this context as well.

**4.** Plaintiff's request, in his brief in support of his motion for summary judgment, for a subsequent hearing in order to determine his damages will be denied as moot.

The Court will also award plaintiff the statutorily authorized penalty and his reasonable attorneys' fees.