**Orrin T. SKRETVEDT, Plaintiff,**

v.

**E.I. DU PONT DE NEMOURS COMPANY, et al., Defendants.**

**No. CIV.A. 98–61–MPT.**

United States District Court, D. Delaware.

May 9, 2003.

John M. Stull, Wilmington, DE, for plaintiff.

Mary E. Cooper, Kathleen Furey Mc-Donough, Potter Anderson & Corroon, LLP., Wilmington, DE, for defendants.

## *MEMORANDUM OPINION*

THYNGE, United States Magistrate Judge.

### I.  Introduction.

Presently before the court are plaintiff's motions for attorney's fees and costs and to strike defendants' brief in opposition to plaintiff's motion.  For the reasons stated below, plaintiff's motion for reasonable attorneys' fees is granted and his motion to strike is denied.

### II.  Background.

Orrin T. Skretvedt, ("Plaintiff"), sued his former employer E.I. Du Pont De Nemours and Co., ("Defendants"), for Long Term Disability, ("LTD"), and Incapability benefits due to a job-induced mental illness that left him disabled.  *D.I. 151 at 1.*  This court granted summary judgment in favor of defendants, which was subsequently reversed by the Third Circuit in June 2001.  *Id. at 2.*  Plaintiff then filed motions for additional compensation in April, 2002, which were both denied on August 19, 2002.  *Id.*

On September 3, 2002, plaintiff filed a motion for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).  *D.I. 153.*  In that motion, plaintiff addressed the legal and factual basis on which to award attorney's fees based on the five factors provided in *McPherson v. Employees' Pension Plan of Am. Re–Insurance Co.,* 33 F.3d 253 (3rd Cir.1994).[1]  Defendants replied on December 16, 2002, arguing that any award to plaintiff of attorneys' fees must be based on the same analysis.  *D.I. 166.*  Thereafter, Plaintiff filed a motion to strike defendants' opposition brief.  *D.I. 168.*[2]

---

1.  In reversing this court's opinion, the Third Circuit discussed the issue of attorneys fees pursuant to ERISA's discretionary fee-shifting provision.  That section authorizes in any action under ERISA "by a participant, beneficiary, or fiduciary, the court in its discretion may allow reasonable attorneys' fees and costs of [the] action of either party."  *29 U.S.C. § 1132(g)(1).*  The Third Circuit directed this court to follow the *McPherson* decision to determine whether plaintiff may be awarded fees and expenses.  *See Skretvedt v. E.I. Du Pont de Nemours and Company, et al.,* 268 F.3d 167, 185 n. 10 (3rd Cir.2001).

2.  Plaintiff filed two motions to strike defendants' opposition brief which are found at *D.I. 167* and *168.  D.I. 168* is the corrected motion to strike and, as a result, shall be the motion addressed by the court in this opinion.

## III. Discussion.

### a. Attorney's Fees.

■ Pursuant to 29 U.S.C. § 1132(g), a court may award reasonable attorney's fees and costs at its discretion. When deciding whether to award fees under ERISA, a court should consider five factors:

(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*McPherson*, 33 F.3d at 254. Based on the evidence in the record, the court finds that all the factors except the fourth should be considered for determining attorneys fees in this case. With the exception of the second factor[3], the court will address each element individually together with the parties' arguments directed to that factor.

### (1) The Offending Parties' Culpability or Bad Faith.

This factor is hotly disputed by the parties. Plaintiff expounds on several notions for bad faith on the part of the defendants. First, he contends that defendants failed to provide access to the administrative appeal. *D.I. 153 at 2.* Under section 503 of ERISA (29 U.S.C. § 1133), a plan or plan administer must provide an appeal as part of the administrative process of the plan. Plaintiff claims that pursuant to a settlement agreement, he was allowed to apply for certain benefits and that those claims would be handled in a "neutral manner". When defendants denied plaintiff's benefits claims, they advised him to take the appeal through the Spruance Plant in Richmond,

Virginia. In October, 1998, defendants, in an exhibit to a stipulation, sought to limit judicial review solely to the appeal consideration, which did not include the original claim. Plaintiff contends that his appeal was "stymied, to the point that [plaintiff] was required to file the within action in federal court **in order to even prosecute the appeal**." (emphasis in the original). *Id.*

Plaintiff also asserts that defendants acted in bad faith by attempting to disqualify his attorney, John Stull ("Stull"). *D.I. 153 at 3.* Defendants moved to disqualify Stull on October 7, 1998, which was denied a year later on September 27, 1999. Plaintiff maintains that as a result of this motion, litigation was delayed for approximately a year during which plaintiff's benefits went unpaid. *Id.*

Third, plaintiff asserts that Du Pont's Board of Benefits and Pensions ("Board") failed to provide specific guidance as to what other "objective medical evidence" was required to support his claim for incapability benefits. *D.I. 153 at 3.* Plaintiff contends that the Board's written responses to his inquiries regarding incapability benefits were mere "boilerplate" and did not provide him with the information necessary to pursue his claim. *Id.*

Plaintiff's final assertion of defendants' bad faith was their blatant and unsupported "post hoc" rationales to justify denial of his claim. *D.I. 153 at 3.* Plaintiff argues that defendants' conduct in this regard was "normal, hardball tactics of . . . its counsel, to justify by court argument a denial of employee benefits." *Id.* The majority of these arguments were raised again by plaintiff in his motion to strike defendants' opposition to attorneys' fees. *See D.I. 168.*

---

**3.** Since defendants' ability to pay attorneys fees is not in issue, it is unnecessary to discuss this factor in this opinion.

Defendants present three arguments in support of their good faith dealing with plaintiff and his claim.[4] *D.I. 166.* First, defendants address the administrative appeal issue and plaintiff's lack of supportive evidence. *Id. at 3.* They emphasize that the settlement agreement on which plaintiff relies related to a separate, non-ERISA, ADA claim and that for plaintiff to make a benefits claim, he had to file suit. Defendants further argue that a fee award is not presumptively available merely because a plaintiff was successful in obtaining ERISA benefits as result of court action. *See McPherson,* 33 F.3d at 254 (holding that there is no presumption in awarding fees to a successful ERISA plaintiff). *Id.*

Second, defendants address their motion to disqualify Stull. *D.I. 166 at 3.* On this issue, defendants maintain that plaintiff has provided no facts or case law to sustain an allegation of bad faith. Finally, defendants argue that plaintiff fails to justify his "post hoc" argument as evidence of bad faith. *Id.*

■ The court finds that defendants' failure to provide the information necessary for plaintiff to proceed with his claim was improper. Such a determination does not necessarily prove that defendants' conduct constituted bad faith, however, the conduct was culpable. *See Hamilton v. Bank of New York,* 1995 WL 447659, *5 (D.Del. July 18, 1995) (culpable conduct is reprehensible, but does not necessarily involve malice or a guilty purpose). As to plaintiff's remaining arguments (alleged denial of access to the administrative appeal process, defendants' attempt to disqualify Stull, and their alleged use of hardball litigation tactics), plaintiff has not provided sufficient evidence to support these contentions. Plaintiff only offers his opinion in support such arguments, which is inadequate to sustain those claims.

Regarding defendants' failure to adequately explain their reasons for denying benefits and to provide enough direction to plaintiff concerning the medical evidence required for review, an important policy interest operates for such information to be conveyed to a claimant, as was noted in *Skretvedt v. E.I. Dupont de Nemours and Company, et. al.,* (3rd Cir.2001). Therein, the court directed its attention to the inadequacies in the original letter sent to plaintiff denying his claim. As emphasized by the court, it simply restated the provisions of the benefits plan[5], and concluded that plaintiff failed to meet the plan requirements without any further explanation. *Id.* at 177 n. 8. The court noted:

> The Board's failure to provide [plaintiff] with reasoned explanations for why it denied his disability claims or information on what evidence he could present to improve his claims raises policy concerns that underlie the notice requirements that ERISA places on pension and benefit review boards... [s]pecifically, the review boards must give reasons to applicants for denying their claims so that: (1) applicants may clarify their application on appeal; and (2) federal courts may exercise an informed

---

4. Before addressing their arguments, defendants emphasize that neither this court nor the Third Circuit found that they acted in bad faith in dealing with plaintiff's claim. The court acknowledges this fact and has considered it in its analysis. *See 9/6/00 Mem. Op. at 18 (D.I.119); 10/31/00 Mem. Op. (D.I.129); and Skretvedt,* 268 F.3d 167.

5. Du Pont's requirements for a claim to show incapability are: "(1) the applicant must present evidence that he was permanently disabled (as opposed to temporarily disabled); (2) at the time of the termination; and (3) the severity of the disability at termination permanently precluded the applicant from performing the duties of his position." *Skretvedt,* 268 F.3d at 177 n. 8.

and meaningful review of the pension board's decisions.

*Id.* Failure to provide such information, while not necessarily rising to bad faith, should be considered in calculating attorneys' fees, if fees are to be levied on the offending party.

Therefore, the court holds that defendants' failure to provide plaintiff with the bases for denying benefits and sufficient information to enable plaintiff to modify his claim should be considered in determining an award for attorneys' fees. The delay caused by such conduct would naturally result in additional attorney time and expense to properly address plaintiff's administrative appeal, and contributed to the filing of a subsequent court action.

### (3) The Deterrent Effect of an Award of Attorneys' Fees Against the Offending Parties.

■ The importance of this factor is sounded in the policy concerns addressed in the previous section. The court finds that an award of attorneys' fees in this matter will have a deterrent effect on defendants' administrative procedures, and as a result, should be part of its analysis in determining fees. Plaintiff's position on this issue is similar to this court's and the Third Circuit's rationale. *D.I. 153 at 4.* Plaintiff maintains, and the court agrees, that the effect of such an award would encourage defendants, as well as other employers, to employ appropriate administrative procedures for the handling of claims for benefits. *Id.*

Defendants argue that "[f]or this factor to have any meaning at all, it must require something more than merely showing that the plaintiff succeeded as to some aspect of the claim and therefore, the employer can be expected to act differently in the future." *D.I. 166 at 4.* They suggest that plaintiff failed to provide sufficient evidence to warrant fees based on this factor.

Moreover, lenient application of this factor would allow any plaintiff to easily claim "that success on one or more claims would deter the employer from taking the same action again in the future that it took with respect to that employee." *Id.* The court finds defendants' argument unpersuasive and holds that the deterrent effect of awarding fees to be a proper element in its determination.

### (4) The Benefit Conferred on Members of the Pension Plan as a Whole.

This element should not be considered in the analysis of a fee award. Plaintiff, in support of this factor, merely argues the same rationale offered under the third factor. *D.I. 153 at 4.* However, as defendants emphasize, the outcome of this case did not effect a change for anyone other than plaintiff. The argument that "an award will deter certain conduct of the defendants, and does nothing to confer a positive immediate benefit on other [p]lan members," is the same as deterrence. *See Hamilton,* 1995 WL 447659, *6. As a result, this element is not part of the court's analysis in awarding fees.

### (5) The Relative Merits of the Parties' Positions.

■ The only evidence presented regarding this factor was plaintiff's success in obtaining certain benefits. Plaintiff argues that by prevailing on this claim, the merits of his position were validated. *D.I. 153 at 5–6.* Defendants contend that plaintiff's success is insufficient to support an award of fees, which, they assert is also the Third Circuit's view. *D.I. 166 at 5.* See *McPherson,* 33 F.3d at 254 (holding that there is no presumption in awarding fees to a successful ERISA plaintiff).

Although a presumption in favor of fees for the prevailing party does not arise, the issues addressed and the merits of the

parties' positions should still should be considered. *McPherson*, 33 F.3d at 258. Therefore, the court will apply this factor in its analysis.

### b. Determining the Appropriate Fee Award.

#### (1) The Parties' Arguments as to the Appropriate Fee Award.

Plaintiff claims two separate fee amounts: one while the matter was before the District Court and the second for proceedings before the Third Circuit. *D.I.153 at 6*. For the representation in the District Court, excluding costs for filing fees and depositions, a total of 707.6 hours in attorney time is proffered, resulting in a fee of $225,707. Regarding the proceedings before the Third Circuit, a total of 265.5 hours of attorney time is claimed for a fee of $83,510.00.[6]

■ In deciding the appropriate fee award, the court must determine the reasonable hourly rate and the proper amount of hours to be applied to the reasonable hourly rate. It is the burden of the applicant under a fee shifting statute, such as 29 U.S.C. § 1132(g), to establish the reasonableness of the rate sought. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Stull, plaintiff's counsel, maintains that the reasonable rate for his services is $320 per hour. *D.I. 153 at 6–10*. He argues

that this rate is consistent with the current market rate in the Philadelphia and Wilmington areas. *D.I. 153 at 5*. In support of his position, Stull relies on case law and affidavits of other ERISA attorneys practicing in the Philadelphia and Wilmington area.

In support of plaintiff's motion for fees, four cases are discussed.[7] Two cases are cited for the proposition that reasonable fees are determined by the current market value in the community. *See Miele v. N.Y. Teamsters Conference Pension Fund*, 831 F.2d 407, 408–9 (2nd Cir.1987) (holding that "prevailing market rates in the relevant community" are the proper basis for a fee award); *Bankston v. State of Illinois*, 60 F.3d 1249, 1255–56 (7th Cir.1995) (holding that a district court may not reduce the established market rate simply because the awarded party is a small firm; the relevant inquiry is whether the awarded attorney's "experience and expertise in the same market are entitled to the same rate"). The findings in these cases are consistent with Supreme Court case law. *See Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

The two other cases addressed are *Hamilton v. Bank of New York*, 1995 WL 447659 (D.Del. July 18, 1995) and *DiSabatino v. DiSabatino Bros.*, 894 F.Supp. 810. In *Hamilton*, plaintiff's attorney, Stull, was awarded attorneys' fees in an ERISA matter based on the hourly rate of

---

**6.** Each amount was calculated on a rate of $320.00 per hour. Moreover, plaintiff notes, and defendants do not contest, that all briefing and appendices expenditures for the Third Circuit appeal were charged to and paid by defendants.

**7.** Three other cases for the court's consideration were attached, but not addressed. Defendants argue, and the court agrees, that these cases are irrelevant because they concern fee awards in non-ERISA matters. *See Ballen v. Martin Chevrolet–Buick of Delaware*, 1998 WL 1013874 (D.Del. Sept.17, 1998) (in-

volving fee petition under civil rights statute); *In re American Real Estate Partners, L.P. Litig.*, 1997 WL 770718 (Del.Ch. Dec.3, 1997) (involving fee petition for class action alleging various violations of corporate statutes); *Bates v. Bd. of Educ. of the Capital Sch. Dist.*, 2000 WL 1292677 (D.Del. Aug 29, 2000) (involving a fee petition for claims brought under the Americans With Disabilities Act). Therefore, no further discussion of those cases is warranted and they will not be considered by the court in assessing appropriate fees

$175.00.[8] 1995 WL 447659 at *6. In *DiSabatino*, an ERISA attorney received fees of $3,840.00 based on a $10.00 per day penalty for each of the 384 days that the defendants were noncompliant. 894 F.Supp. at 816–7.

In addition to Stull's affidavit, affidavits from four other attorneys practicing in both Philadelphia and Wilmington have been proffered. *D.I. 153 at 9 (Ex. B)*. Of these affidavits, the only one considered by the court is the affidavit of Richard R. Weir, Jr., Esq.[9] Weir is a practicing ERISA attorney in both Wilmington and Philadelphia and verifies that fees for his services in ERISA matters brought in fed-

eral court in Delaware are $300 to $350 per hour. Weir opines that $325 is a reasonable rate for ERISA matters in the local market of Wilmington and Delaware as of September 2002. *Id.* The affidavit does not, however, provide the hourly rates for ERISA attorneys for any other year in which Stull worked on this matter.

Stull's arguments in support of the claimed aggregate of 973.10 hours of his time are as follows. *D.I. 153 at 6–9.* First, he points to the time and burden involved in the case. *Id. at 5.* More specifically, the hours billed are reasonable due to the volume of documents involved. Further, the attorney "time has been re-

---

8. Stull had requested $225 per hour. His hourly rate was reduced in the amount of $50 by Judge Schwartz for various reasons, including his failure to provide support for the rate demanded.

9. The court will not consider the remaining affidavits because they are either irrelevant, lack personal knowledge or were simply not provided to the court. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Federal Rules of Evidence Rule 401*. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *Fed. R. of Evid. 403*.

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. *Fed. R. of Evid. 602.* (emphasis added). Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. *Id.* Supporting and opposing affidavits shall be made on *personal knowledge*, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Federal Rules Civil Procedure Rule 56(e).* (emphasis added).

The affidavit of M. Duncan Grant, Esq. ("Grant") was not considered because it is irrelevant to the present matter. It is apparent from its caption and its contents that Grant's affidavit was filed in 1996 in another matter in a state court (Court of Chancery). It does not appear on its face to relate to ERISA issues. It contains no information that, at the time it was originally proffered, Grant was an attorney specialized in ERISA matters, or that his testimony regarding appropriate fees related to ERISA claims. Moreover, in light of the fact that the affidavit was submitted with the original caption, and not the caption of this case, the court doubts that Grant is aware that he is being proffered as an expert witness in the present matter.

The affidavit of Robert F. Stewart, Esq. ("Stewart"), suffers from similar infirmities as the Grant affidavit. While the affidavit addresses an hourly rate for a practicing attorney in ERISA, again it contains the caption of another matter and there is nothing to suggest Stewart's knowledge of the affidavit's use in this matter. Moreover, Stull has not shown that the skill required in the present matter was comparable to that exercised by Stewart in his case.

The court is unable to consider the affidavit of Gary W. Aber, Esq. ("Aber"), since plaintiff failed to provide a copy in any of his submissions. As a result, the court cannot substantiate plaintiff's claims that Aber is an ERISA attorney who charges the hourly rate represented in the absence of evidentiary support.

duced to adjust the hourly rate to equate to a lesser amount of time spent by a paralegal."[10] Moreover, for the past four and half years, plaintiff's counsel notes that he has not been reimbursed for professional services provided, nor for costs and expenses related to this case, in part due to plaintiff's lack of income. *Id. at 5.*

Counsel also emphasizes the difference between representing a "non-funded" client, and a "funded" party, such as, the defendants. *D.I. 153 at 7–9.* Under this argument, Stull suggests that defendants' financial worth and stability allows both in-house and outside counsel the luxury of providing legal representation without the fear of non-payment for that service.

In support of his position regarding the reasonableness of his fees, Stull argues that defendant's alleged reputation in the local legal community should be considered. Accordingly, "several local ERISA knowledgeable counsel were contacted and many voiced the unfavorable experience," of suing DuPont. In addition, Stull alleges that "[a] large group of ERISA counsel are defense counsel, again supported by well-funded entities, intent on 'blowing away' any mere plaintiff's counsel, especially solo practitioners." *Id. at 8.*[11]

Stull's argument in support of the reasonableness of the amount of the attorney hours expended relates to the additional time caused by defendants' attempt to disqualify him. *D.I. 153 at 8.* According to Stull, such time was needlessly spent, because such motions are rarely granted, and due to the lack of supporting evidence for

defendants' claim of disclosure of confidential information. *Id.*

In addition to fees, plaintiff also demands reimbursement for the depositions taken in the case in chief (Brenner, Ramirez, Watson and plaintiff) totaling $1,574, and for other depositions relating to the disqualification issue, in the amount of $546. *D.I. 153 at 9.* Plaintiff also requests that the filing fees for the District Court, $150, be included. The total for these itemized expenses are $2,270. *Id.*

Defendants counter these contentions with three arguments. *D.I. 166 at 6–14.* First, they suggest that Stull's rate is too high. *Id. at 6.* As noted previously in footnote 7, defendants argue that Stull has not proven the reasonable hourly rate since he fails to show that fees charged in the non-ERISA cases cited are comparable to the fees charged in ERISA matters. *Id.* Defendants emphasize that Stull has not demonstrated that a flat rate should be levied regardless of the level of difficulty involved. *Id. at 6–7.* As discussed previously, in *Hamilton,* the court set the reasonable hourly rate at $175 for Stull's services in 1995. In the present matter, Stull asserts a $320/hour rate, beginning only two years after the *Hamilton* decision. Defendants contend that nothing has been presented warranting a 45% increase within those two years. Therefore, according to the defense, no evidence has been offered "as to when and in what increments the market rate," or Stull's "own hourly rates, have increased" during the past five years while this litigation was pending.[12]

---

10. Counsel, however, fails to advise as to the amount of each reduction and which time entries were reduced.

11. None of these rambling, inarticulate comments are supported by any evidence, such as, affidavits or other sworn testimony, and appear merely to be a diatribe by plaintiff's counsel. Therefore, these statements will not be considered by the court in its analysis.

12. Defendants also included the affidavit of Mary E. Copper ("Copper"), as evidence of the reasonable hourly rate. The affidavit provides Copper charged $240 per hour in 1997 and 1998, and that she charged $325 per hour in 2002, but provides no rates for 1999, 2000 or 2001. *D.I. 166 (Ex. E).*

*Id. at 7.* Furthermore, no evidence has been submitted suggesting that Stull's skill and experience in ERISA matters are comparable to those of other attorneys practicing in ERISA. *Id. at 8. See Blum v. Stenson,* 465 U.S. 886 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (noting that current market should be determined "in lines with those prevailing in the community for similar services by lawyers of similar skill, experience and reputation"). Moreover, according to defendants, Stull's "unfunded client" argument is entirely improper in light of case law. *See City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (holding that courts may not increase the lodestar amount based on an attorney's contingent risk when calculating a fee award pursuant to a fee shifting statute). *Id. at 7.* Defendants urge the court to employ their analysis when setting a reasonable fee based on the court's familiarity with the case and the work performed. *See Clarke v. Frank,* 960 F.2d 1146, 1153 (2nd Cir.1992); *Cunningham v. City of McKeesport,* 753 F.2d 262, 267 (3rd Cir. 1983). *Id. at 9.*

■ Defendants next argue that plaintiff is not entitled to attorneys' fees for his unsuccessful claims. *D.I. 166 at 9.* They specifically object to the inclusion of Stull's 43 hours from March 2002 through August 2002 spent on plaintiff's unsuccessful attempt to obtain short-term liability benefits and other monetary relief.[13] Defendants maintain that because "it is unclear what portion of Stull's time prior to March 2002 was spent in relation to the unsuccessful claims, as the time records do not clearly delineate time spent on one claim from time spent on others," the court

should disallow such expenses or in the alternative, "fix a reasonable percentage reduction to account for plaintiff's lack of complete success." *Id. at 9–10.*[14] A court may reduce fees based on a lack of success. *Winter v. Winter v. Cerro Gordo Cty. Conservation Bd.,* 925 F.2d 1069, 1074 (8th Cir.1991); *Popham v. City of Kennesaw,* 820 F.2d 1570, 1581 (11th Cir.1987).

Finally, defendants contend that a significant reduction should occur for duplicative time entries, for attorney time spent on purely administrative or clerical tasks, for failure to accurately record time contemporaneously, and for wholly unbelievable and unsupportable entries. *D.I. 166 at 10.* Defendants attack Stull's records with specificity, and each point will be addressed.

First, defendants reference several duplicative entries, where it appears that Stull completed the same tasks twice. *D.I. 166 at 10.* Two entries, both on 10/27/00 for 1.00 hour each, note that Stull worked on a letter to the Third Circuit requesting relief from certain deadlines. Similarly, there are two entries on 2/12/01, each for one hour where Stull read, filed and drafted designations of the issues and recorded citations. In addition, there are two virtually identical entries on 2/26/01 where Stull spent 3.00 hours reading and consulting with his client regarding defendants' motion to strike. *Id. at 10.* Clearly, according to case law, duplicative time entries may be disallowed. *See Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Next, defendants ask the court to disregard any hours associated with purely administrative and clerical tasks, such as,

---

**13.** In its decision of August 19, 2002, the court held, in part, that such relief was not available under ERISA. *See D.I. 151.*

**14.** Defendants also note that both bills submitted by Stull are dated September 2, 2002,

indicating that the records were not made contemporaneously with the work performed. Defendants question the reliability of these records given the duplicative and excessive time entries made by Stull. *D.I. 166 n. 8.*

photocopying and filing, on the basis that such time should not be considered or allowed in the fee calculation. *D.I. 166 at 11. See Emmenegger v. Bull Moose Tube Co.,* 33 F.Supp.2d 1127, 1138 (E.D.Mo. 1998); *Cefali v. Buffalo Brass Co., Inc.,* 748 F.Supp. 1011, 1019 (W.D.N.Y.1990). They also argue that Stull's arbitrary application of a reduced rate of $175 per hour for some of these entries is unsupported by case law and is without justification.[15] *Id.*

Defendants maintain that the court should consider plaintiff's failure to provide contemporaneous bills to support the time entries in determining the appropriate fee award. *D.I. 166 at 11.* As mentioned above, both of Stull's bills are dated September, 2, 2002, and purport to reflect time relating back to 1997. As a result, defendants argue that the accuracy of the billing entries are seriously compromised. *Id.*

In addition, defendants contend that some of Stull's entries are "wholly unreasonable," specifically referring to the 40 hours spent on research for the appeal to the Third Circuit. *D.I. 166 at 11.* While they concede that such research may be substantial, defendants urge that most relevant research should have already been completed during the briefing in this court. *Id.*

Other time entries that defendants' claim are unreasonable include:

- A 3/24/00 entry which reflects two full hours spent preparing a notice of deposition;
- An entry on 5/24/00 suggesting that it took 30 minutes to read the court's signature on a "so ordered" line regarding Weir's stipulation of withdrawal as counsel (the stipulation itself having already been read on 5/17/00);
- An 11/26/01 entry of one full hour to review an order setting the date and time for a status conference;
- A 3/28/02 entry of sixty minutes to review a simple notice of substitution of counsel;
- Entries on 5/6/02, 6/28/02 and 7/24/02 of .5, .5 and 1.0 respectively, for a total of 120 minutes, to review three orders setting the time for status conferences;[16]
- A 7/30/02 time entry of a half hour reading an order cancelling a status conference.[17]

*Id. at 12–13.*

Defendants' next concern with Stull's records is the inordinate amount of time involved discussing various motions and filings with his client. *D.I. 166 at 13.* For example, Stull purports to have spent a full 22 hours, as indicated by several 2/21/01 entries, discussing the opening brief on appeal with his client. Later, in a 4/6/01 entry, Stull records an additional eight hours spent with plaintiff regarding the reply brief. *Id.*

**15.** As mentioned previously, Stull argued that he had either reduced his rate or time for administrative and clerical work to equate to both the time and hourly rate of a paralegal. However, as observed in footnote 14, the time entries to which a reduction was applied, as well as, the amount of the reduction, is unknown. Further, Stull has submitted no evidence of the reasonable hourly rate for paralegal time to justify a charge of $175 per hour.

**16.** Each order consisted of the following three lines: "At Wilmington, Delaware, this [date of order]. IT IS ORDERED that a teleconference has been scheduled for [day, date and time of the conference call]. Defense counsel [or name of defense counsel] shall initiate the teleconference call."

**17.** The order of July 29, 2002, was approximately the same length and consisted of similar text as the orders noted in footnote 16, except to advise that the telephonic conference was canceled.

Defendants reference certain entries as "egregious instances in time keeping." *D.I. 166 at 14.* Stull's time on 2/20/01 reflects a total of 74.00 hours billed in a single day.[18] His entries on 4/6/01 show 40.00 hours billed in one day. Time entries for 3/12/01 reflect 22 hours billed in conjunction with preparing the reply brief on appeal; entries on 6/2/01 reflect 18.00 hours charged on that day relating to the dispute over items Stull omitted from the joint appendix on appeal; and the 6/28/01 entry reflects an entire day, that is 24 hours, billed for preparing (and traveling to Philadelphia) for oral argument before the Third Circuit and consulting with plaintiff. *Id.*

Defendants final argument is that Stull has an obligation to exercise "billing judgment" and insure that duplicative and unreasonable time is removed before submitting it to the court. *See Cefali, 748 F.Supp. at 1019; Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. *Id. at 14.* Summarizing their previous concerns, defendants note that Stull has shifted the burden of examining his timekeeping records on both the court and defendants. *Id.* As a result, they request a blanket reduction of 75% to the total number of hours submitted, which is well within the court's discretion.[19] Such a reduction, according to defendants, is supported by the time spent in pursuing meritless claims and Stull's failure to remove duplicative, unreasonable and often wholly unbelievable time entries. *Id. at 15.*

**(2) The Fee Award.**

In determining the proper fee award, the court will address both the reasonable

hourly rate and the appropriateness of the amount of hours claimed.

█ First and foremost, it is the movant's burden under 29 U.S.C. § 1132(g) to establish the reasonableness of the rate sought, particularly since ERISA matters involve "litigation [that] varies along a continuum from the very simple to the extremely complex." *Hamilton, 1995 WL 447659, *8.* In *Hamilton,* Stull, the same counsel in this matter, claimed a flat rate of $225 per hour as the current market rate for the Wilmington area. There, the court reduced the rate to $175 per hour because "[t]he affidavits do not relate how", if at all, the legal services required to litigate and prevail in this case compare to the average modicum of legal skills that a client would normally purchase from the affiants at the $225 per hour rate for "ERISA litigation." Judge Schwartz noted that "the complaint in [the] case was basic," as it simply related facts and a "declaration of long term disability status and payment of disability benefits," which required neither significant research nor "technical legal difficulty." *Id.* Furthermore, the complaint did "not delve into the details of ERISA or become entangled in ERISA's 'comprehensive and reticulated' remedial scheme." *Id. citing Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

Similar to *Hamilton,* this matter did not involve complex legal or factual issues for plaintiff's counsel. In both matters, plaintiffs made claims for disability benefits against their respective employers' pension plans under 29 U.S.C. § 1001. Such

---

18. The two group entries made on that date include 40 hours for research, draft, review and finalization, 22 hours with the client and four "assembly hours." The court exercises judicial notice that there are only 24 hours in a day.

19. The fee award using defendants' proposed reduction would yield $77,848.

claims are common in ERISA litigation. Stull, who has practiced ERISA for approximately 13 years, claims expertise in "the jurisprudence of ERISA" and has previously engaged in similar claims against the defendants herein. *D.I. 168 at 6.* In the present matter, Stull conducted basic ERISA services for his client such as researching, and briefing and communicating with his clients' former employer and its counsel concerning the benefits plan. To initiate the matter in this court, Stull prepared, albeit, a lengthy complaint and amended complaint containing multiple counts. However, the charging pleadings contained limited factual information and cited to certain statutes, both of which were merely repeated for each count.

Moreover, the primary concern addressed by the Third Circuit on appeal was the notice requirements to be met by plan administrators under 29 U.S.C. § 1133. *Skretvedt,* 268 F.3d at 177 n. 8. The language of this section clearly does not require an attorney to delve into the "comprehensive and reticulated" issues of ERISA. *Massachusetts Mut. Life Ins. Co.,* 473 U.S. at 146, 105 S.Ct. 3085. Although this matter did not involve particularly complex legal issues under ERISA, the court recognizes that part of the fees and expenses incurred related to defendants' failure to provide, at the administrative level, an adequate explanation for denying benefits and sufficient information to enable plaintiff to modify his claim. Interestingly, defendants do not oppose a significant portion of the hours incurred while the matter was in this court, except for those hours spent in pursuing the unsuccessful claims, which are presently on appeal to the Third Circuit.

█ Since the issues involved in this matter were not sufficiently complex to merit a flat hourly rate of $320 throughout the pendency of the case, the court will determine rates for 1997 through 2002 based on the limited, and quite frankly, inadequate record provided. The affidavits provided in support of the motion for fees are insufficient to make this determination. Thus, the court will exercise its discretion in this regard. *See* 29 U.S.C. § 1132(g)(1).

As noted previously, Stull offers rates in the Wilmington area of $175 per hour in 1995 and $325 in 2002. *D.I. 153 at 9.* Defense counsel's affidavit provides further information regarding the hourly rates charged in 1997 and 1998 at $240 per hour, and at $325 per hour in 2002. *D.I. 166 Ex. E.* In the motion to strike defendants' brief, Stull argues that, based on Copper's affidavit, the appropriate rates for 1999 through 2002, could be determined by applying a 10% annual increase per year. Beginning with 1998, and applying Stull's logic, the rate of $240 results in a $213 per hour charge in 1997 [20], $264 in 1999, $290 in 2000 and $319 in 2001. Stull has also provided evidence that his actual fee in similar cases in 2000 *and* 2001 was $300 per hour. *Id. at 5–6.*

Stull's unsupported 10% argument is an interesting approach. However, other considerations are significant in the court's analysis regarding the reasonable hourly rate and the appropriateness of the amount of attorney time expended in this matter.

As discussed above, there has been no showing that this case was particularly complex. Thus, the court will apply the guidance of *Hamilton,* and reduce the $320 flat hourly rate proposed by Stull. Further, by Stull's own admission, his actual charge per hour in 2000 and 2001 was

---

**20.** The hourly rate of $213 for 1997 was calculated by applying a 10% reduction to the $240 per hour charge in 1998. The 1999 through 2001 charges were calculated by increasing the rate at 10% per year.

$300.[21] This admission prohibits a higher rate for those years, and, in effect, provides a maximum that will be considered by the court, particularly in the absence of any complex issue warranting an increase. Moreover, Stull's 10% argument refutes his claim for a flat $320 per hour rate during the pendency of this matter.

Stull's time records, especially for the time devoted to the appeal, are sloppy, unprofessional and inexcusable, particularly for an attorney who claims an expertise in ERISA matters and expects this court to award $320 per hour for his work. Stull represents that he is not a novice to such litigation, having practiced in this arena for over thirteen years. He should be more than minimally familiar with the foundation that he is required to show on a motion for fees and costs. Stull was clearly advised in *Hamilton* regarding his obligations to this court concerning the evidence required.[22] It is no excuse that Stull is a sole practitioner.

Numerous time entries by plaintiff's counsel are inherently unreliable on their face. The fact that Stull does not prepare monthly bills is no excuse to lump 74 hours of work allegedly performed in one 24 hour day. Stull's argument that for him to maintain daily time records on any case is unworkable and that he did not send monthly statements because his client could not pay, misses the point. Plaintiff and his counsel have the burden of establishing that the attorney rate and hours expended are reasonable. As counsel moving on behalf of his client for attorney's fees and costs, Stull has the affirmative obligation to maintain accurate records and present that information to the court and opposing counsel in a reliable, cogent fashion, thereby allowing opposing counsel to determine if any reasonable objections are warranted and enabling the court to properly evaluate the motion. The time entries for work performed by Stull at the District Court level, in general, have not elicited substantial objections from the defense.[23] However, his entries for professional services done on appeal fail to provide the court with any confidence as to their accuracy. In fact, Stull suggests that he did not maintain contemporaneous records regarding any work performed and when it was done, which puts into question all time entries made by him in this case. *D.I. 168 at 7–8.* It is not the court's responsibility to "guess" at what was done, when it was performed and how long it took to complete to determine whether the time claimed is reasonable. Although the court may take into account considerations beyond the pure legal issues, these are not limitless and must be rational. The court may not accept just any representation of professional hours expended purely on blind faith. Moreover, Stull's arguments, in particular those presented in the motion to strike, are inarticulate, and often unclear.[24]

---

**21.** Stull's hourly rate is evidenced by the bills in other cases that he attached to the submissions in support of an award for fees and costs.

**22.** Judge Schwartz patiently instructed Stull in *Hamilton* explaining in detail the evidentiary shortfalls in relation to the reasonable rate, which shows that Stull has been directly aware since 1995 of the support required for a claim for attorneys' fees. *Hamilton,* 1995 WL 447659, *7.

**23.** Limited objections have been raised by defendants regarding the time charged while the case was pending in this court. Although the defense argues that certain time expended for what is described is unreasonable, the primary dispute relates to the pursuit of the unsuccessful claims after the case was remanded.

**24.** Plaintiff's motion to strike is misnamed. In reality, it is a reply brief to circumvent the court's Order of December 13, 2001 limiting counsel to opening and answering briefs on

Regarding fees and expenses associated with plaintiff's unsuccessful motion and appeal of the court's August 19, 2002 decision, those expenditures will not presently be addressed in this opinion since those issues on appeal are not complete. Thus, fees and expenses related to attorney time expended beginning on February 13, 2002 and thereafter will not be addressed until the Third Circuit has rendered its opinion on that appeal.[25]

Considering the number of years required to obtain a favorable decision, the resultant increase in hourly fees during that time, the limited complexity of the issues involved, the evidence provided regarding reasonable attorney's fees and the quality of Stull's work as observed by this court, a finding that a flat rate of $235 per hour throughout the pendency of this matter is reasonable and supported by the record.

■ The number of hours claimed has been reduced from an overall number of 973.1 to 765.50. This is based on a "total hour" approach for time devoted to a particular project because the recorded hours expended each day are not reliable. The reductions will be addressed in relation to Stull's attachments, that is, for services performed while the matter was pending in each court.

Plaintiff claimed 707.6 billable hours in this court which has been reduced to 647.8. The three entries on 3/24/00 for two hours to prepare a notice of deposition, 5/24/00 for 30 minutes to read an order granting stipulation, and 1 hour to review an order

setting a status and scheduling conference total 31/2 hours and are unreasonable. The court concludes that the reasonable amount of time needed for the these activities is thirty minutes. Also, as noted previously, all hours billed after 2/13/02 appear to concern the matter on appeal and are presently excluded. The costs associated with the hearing and depositions transcripts of $2,120.95, plus filing fees of $150 will be allowed.[26]

Significant reductions apply to the hours claimed for professional services provided on appeal. Here, plaintiff claimed 265.5 billable hours which is reduced to 117.7. The reductions are addressed by dividing Stull's billing statement into three general time periods. *See D.I. 153 Ex. A.* First, is the period from 10/6/00 to 2/20/01. Two entries (a letter from the Third Circuit) both dated October 27, 2000, appear duplicative and therefore, one is excluded. Similarly, the entries on 2/12/01 appear duplicitous for what is generally described and an hour entry is deleted. Concerning the two entries dated 02/20/01, it is obvious that 74 hours could not have been expended in one day. Further, some time was devoted to purely clerical work (four assembly hours, eight hours for duplication, collation, printing, distribution, service arrangements and filing). The description of the work performed is inadequate and the overall time is excessive in light of the relationship of the research and briefing on appeal to that in the court below. As a result, the total hours allowed for the

---

the issue of fees and costs. Plaintiff's counsel provided no legitimate basis for striking defendants' answering brief.

**25.** However, the court finds that entries, such as, an hour to review a notice of substitution of counsel on March 28, 2002, 2 hours to review three orders setting the time for status conferences (May 6, June 28 and July 24, 2002) and 30 minutes to read an order can-

celling a status conference (July 30, 2002) are excessive and unreasonable.

**26.** According to Stull's billing records, the court calculates that the costs for all transcripts, including the depositions in the motion to disqualify, are $2,120.95. With the addition of the filing fee, the total amount of costs allowed is $2,270.95

preparation of the opening brief on appeal is limited to 25.

The next block of time is from 2/26/01 to 3/16/01. The billing within this period involves plaintiff's response to defendants' motion to strike. Claimed are 53.5 billable hours, which the court reduces to 22. In this allowance, the court has excluded the time that was purely clerical, such as photocopying, assembling and mailing by counsel.

Finally, from 3/22/01 to 10/5/01, 82.5 hours were devoted to plaintiff's reply brief, for which 25 hours will be allowed. The entry on June 28, 2001, (preparation for and attendance at oral argument in the Third Circuit) is excessive and is reduced to 16 hours. Moreover, the expenses for the cost of appeal and binding and copying, totaling $443.09, are excluded since those costs have been previously paid by the defense. *See D.I. 153.*

The total amount of billable hours are: 647.8 for the District Court; and 117.7 for the Third Circuit. The fee awarded for services in the District Court is $152,233, the product of 647.8 hours multiplied by $235. The fee for the professional services on appeal to the Third Circuit are $27,659.50, the result of 117.7 hours multiplied by $235. Thus, the total fee allowed is $179,892.50.

### c. Conclusion.

For the reasons contained herein, plaintiff's motion for attorney's fees and costs is GRANTED. Plaintiff's motion to strike defendants' answering brief is DENIED. As a result, the amount of attorneys' fees and costs awarded against defendants is $182,163.45. This figure is the sum of the total hourly fee as calculated herein ($179,-892.50) plus $2,270.95 of expenses incurred in the District Court. This decision does not address the reasonableness of either the hours claimed or fees demanded regarding matters after February 13, 2002

An order consistent with this opinion will follow.